ERNEST L. CAUCHON *v.* HYMAN GLADSTONE.

February Term, 1932.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed May 4, 1932.

*Martin S. Vilas* and *Mary C. Alafat* for the plaintiff.

*Francis D. Foley, Guy M. Page,* and *Hollis C. Porter* for the defendant.

360

SLACK, J. The claimant seeks to recover compensation under the provisions of the Workmen's Compensation Act, hereafter referred to as the Act, for injuries sustained by him while in defendant's employ, to wit: On October 1, 1929. His right to recover is challenged on the sole ground that at the time he was injured the defendant did not regularly employ more than ten employees.

The main question for review is raised by the exception to a directed verdict for the defendant at the close of claimant's evidence.

Section 5768 of the General Laws provides that the Act shall not apply to "employers who regularly employ but ten employees or less," unless such employer notifies the commissioner of industries that he wishes to be included within the provisions of such Act. The defendant never gave such notice.

The defendant was engaged in the bakery business in the city of Burlington. He had two plants, one on School Street and the other on Winooski Avenue.

It is conceded that he had in his employ eight regular employees at the time of the accident in question. The status of five other persons, namely, DePaux, Pasquale, Mason, Sylvia Gladstone, and the pastry cook's helper is in dispute.

The defendant contends that the first three persons were independent contractors; that Sylvia Gladstone, a daughter of the defendant, was a minor, and therefore could not have the status of an employee; and that defendant did not regularly employ a pastry cook's helper.

■ ■ The claimant had the burden of showing that the four persons named· were performing work for the defendant, for· his· benefit. That made a *prima facie* case of ordinary service, and the burden of evidence was then with defendant to produce such facts as he relied upon to show a different status, *Kelley's Dependents* v. *Hoosac Lumber Co. et al.*, 95 Vt. 50, 113 Atl. 818; *LeBlanc* v. *Nye Motor Co. et al.*, 102 Vt. 194, 147 Atl. 265, unless, of course, such facts appeared from the claimant's evidence.

■ The parties agree that the test in determining whether one who is performing work for another is a servant or an independent contractor within the meaning of the Act is that stated in *LeBlanc* v. *Nye Motor Co. et al., supra,* and cases there

cited, namely, the *right* of the one for whom the work is being done to control the work, to direct the means and method by which it shall be done, actual interference, however, not being necessary.

 Applying this test we will examine the evidence, having in mind that the provisions of the Act are to be liberally construed. G. L. 5831. DePaux sold defendant's bread in a territory designated by the latter. He was not allowed to invade the territory of anyone else who was acting for the defendant, and he was required to begin work at a certain time in the morning. Beyond this the defendant had no control over him. He took from defendant's bakery each morning, such quantity of bread as he desired, sold it to whom he could and for such price as he saw fit. He used his own automobile or truck in his work, and bore all expense incident to its upkeep and operation. When he got in from a trip he returned to defendant such bread as he had not sold, and accounted for what he had sold at six cents a loaf, and the transaction was closed. There was evidence, too, that on the same trips he sold pastry and fruit that he procured from someone other than the defendant, but we do not regard this as a necessary factor in determining his relation with the defendant.

Pasquale was not called as a witness, and there was but little evidence concerning his operations. Like DePaux, he sold defendant's bread in a territory assigned to him by the defendant. It did not appear, nor is it claimed, that his relations with defendant were essentially different than those of DePaux. The claimant's own evidence tends to show that these men were independent contractors, and not employees of the defendant. See *Hawker's Case* (Mass.), 179 N. E. 807.

Mason had two routes, one known as the Huntington route and the other as the Milton route. It appeared from claimant's evidence that Mason's relations with defendant as far as the Huntington route was concerned were substantially the same as those of the two men already mentioned, and as to that route he stands the same as they did.

 Mason's arrangement respecting the Milton route stood differently. It appears that he covered that territory on Monday afternoon and Thursday afternoon of each week, and that he at first received $5, and later $4, for each trip, regardless of

the amount of bread that he sold or delivered. Although the evidence is not clear, we understand that most, if not all, of the customers on that route were storekeepers, and that he was directed by defendant to take no new customers on that route who were not storekeepers. Be that as it may, he was directed by defendant to give credit to certain parties on that route, if they desired it, and did so. The defendant furnished him with a book that contained the names of the parties to whom he could give credit, in which he entered the goods delivered to such parties, if not paid for, and which book he returned to the defendant at the end of each trip. Although he used his own truck on that route, the evidence respecting the arrangement under which he operated is such that it cannot be said as a matter of law that he was not an employee of the defendant.

■ Sylvia Gladstone was a minor daughter of the defendant, nineteen years of age. The evidence tends to show that at the time claimant was injured, and for some time before, she worked in defendant's School Street bakery, and the store connected therewith, keeping books, waiting on customers, assisting about filling the orders of those who sold bread outside, etc., and that for her services she received $5 a week and board in her father's family. Indeed the evidence was such as to justify a finding that she was an employee of the defendant, but for the fact that she was a minor and a member of his family.

That the act under consideration was intended to apply to and include minors as well as adults is evidenced by the fact that special provision is made respecting the former by sections 5758 and 5765. We held that the Act does include minors in *Wlock* v. *Fort Dummer Mills,* 98 Vt. 449, 129 Atl. 311. One of the questions there raised was whether the plaintiff, a minor between fourteen and sixteen years of age, who had accepted payment under a compensation agreement entered into between her and the defendant, her employer, under the Act was thereby precluded from maintaining a common-law action for negligence, and it was held that since she had not deposited with her employer the certificate required by sections 5832 and 5833 of the statute (provisions of the Child Labor Law), she was not an employee within the true intent and meaning of the Act, and consequently not controlled by its provisions. But we recognized the fact that minors who are lawfully employed stand

under the Act like any other employee. It is said at page 457 of 98 Vt., 129 Atl. 311, 313: "It is to be observed that the provisions of the Child Labor Law do not prohibit the employment at work of a child between the ages of fourteen and sixteen years, who deposits with the employer an employment certificate answering the requirements of that law, nor of a child of more than sixteen years, although the hours of labor are limited if the child is under the age of eighteen years. In either case, a child may lawfully be employed and, when so employed, stands (except as to hours of labor) like any other employee with reference to the Workmen's Compensation Act."

It should be noted that, since this girl was nineteen years of age, neither of the exceptions there referred to apply to her.

It is said further in the Wlock case: "It is to minors who are employed without violating any of the provisions of the last named law (the Child Labor Law), that reference is made in sections 5758 and 5765 of the Workmen's Compensation Act where the employment of minors is recognized, and by the latter of which sections a presumption is created that, when employed, their rights are to be governed by the provisions of that Act, unless notice of a contrary intention is given by or to the parent or guardian of such minor." See 28 R. C. L. p. 766.

We hold that Sylvia Gladstone, if actually employed by the defendant, stood like any other employee under the provisions of the Act, and must be so treated in the instant case. There being evidence tending to show that she was an employee of the defendant, that question should have been submitted to the jury.

The evidence as to when the various persons who served defendant as pastry cook's helper at the School Street plant began and quit work is not very definite or satisfactory, but it tends to show that one Plunkett was pastry cook, or baker, from about two weeks before Christmas, 1928, to the middle of the following September; that he did not have a a helper, except occasionally someone from the other plant, until sometime in June, 1929, when one Morse, was employed; that Morse continued in that position something like two weeks after Plunkett got through; that Nathan Gladstone, defendant's son, did the pastry cooking for a few days after Plunkett left; that after that one Visnia served as pastry cook for a short time; that one Filio began work the latter part of September,

1929; that he worked as Visnia's helper two or three days, Morse having finished work, when Visnia left and Filio took the position of pastry cook; that he acted as such until the 22nd of October, 1929, when he quit; that when Filio took the position of pastry cook defendant promised to furnish him a helper, and renewed such promise from time to time, but failed to get one, claiming that he could not find anyone; that during the time Filio was there, help from the other plant assisted him frequently, and the last two or three days of his stay one Perrott who worked at the same plant, but was hired to make sour bread, a new line of work, helped him, and that there was no one actually serving as pastry cook's helper at the time claimant was injured, nor for a few days just previous. The question is whether this evidence justifies a finding that there was a regularly employed pastry cook's helper at the time claimant was injured.

This presents a new question in this State, and one upon which but little aid can be found elsewhere. Most of the cases that have arisen in other states, under statutes similar to ours, raise the question of whether certain persons were in fact employees, or whether, if so, their employment was purely casual or otherwise.

Under the statute of Connecticut, an employer of *less* than five employees regularly is exempt from the operation thereof, unless he elects otherwise. In *Green* v. *Benedict,* 102 Conn. 1, 128 Atl. 20, it appeared that claimant was injured on May 20; that on that day defendant had but two employees; that on ten of the twenty-six preceding working days he had less than five; that on the remaining sixteen days he had more than that number; that he had less than five on May 15, 16, and 17, and more than five on May 18 and 19. There was no showing as to the number of employees after the accident. This evidence was held to show regular employment of more than five employees.

The language of the Rhode Island exception is "five or less." In *LaCroix* v. *Frechette,* 50 R. I. 90, 145 Atl. 314, it appeared that beginning September 2, defendant employed five men the first week, an additional man the next week, and a few days later the deceased; that the seven worked thereafter until September 27, when deceased received the injuries from which he died. There was no showing respecting the number of

men employed after the accident. It was held that defendant regularly employed more than five men, and did not come within the exception.

In *Mobile Liners, Inc.* v. *McConnell,* 220 Ala. 522, 126 So. 626, 630, it was held that the employment of ten men regularly and more than six others as occasion required, but at fairly regular intervals, for a considerable time, took the employer out of the exception of section 7543 of the Code of 1923, which provides that employers who regularly employ less than sixteen men are not included in the act. Here, again, there was no showing as to the number of men regularly employed subsequent to the accident.

These cases are the most nearly in point of any that we have found. In the first two the period of employment of any number of men was much less than in the instant case, and in the other the length of time did not appear. In the first case, as here, there were less than the prescribed number employed on the day of the accident, and this was true as to three of the five days preceding the accident.

There can be no doubt but that, as long as Morse and Filio served as pastry cook's helper, such a helper was regularly employed, since it was not necessary that the same person serve continuously in that capacity to constitute such employment. *Mobile Liners, Inc.* v. *McConnell, supra.* How long before claimant was injured Filio ceased to serve in that capacity does not appear, but it was a very short time. And when Filio began work as pastry cook he was promised a helper, and such promise was renewed from time to time while he held that position, which was about a month. Defendant contends that such promises had no materiality. We cannot agree with him. It is said in *Mobile Liners, Inc.* v. *McConnell, supra:* "The word 'regularly,' as used in the statute, refers to the question as to whether the *occurrence is or is not in an established mode or plan in the operation of the business, and has not reference to the constancy of the occurrence."* We think that in view of the fact that a helper had been employed for three months, and until shortly before the accident, together with the tendency of the evidence showing the necessity for such a helper, the defendant's promises to furnish one were very important. Such promises tended to show, in connection with the other circumstances, to

quote from the Alabama case, ''an established mode or plan in the operation of the business.''

The fact that there was no one employed as a helper on the day of the accident, though a circumstance to be considered, is not determinative of the question of whether a helper was regularly employed.

As the evidence stands, it tends to show that such a helper was regularly employed at that time. If the contrary is susceptible of proof, the burden is with the defendant. *Green* v. *Benedict, supra.* See, also, *LeBlanc* v. *Nye Motor Co. et al., supra.*

The disposition of the questions examined makes consideration of other exceptions saved unnecessary.

*Judgment reversed, and cause remanded.*