GEORGE FRANCE *v.* WILLIAM D. MUNSON.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued October 6—decided December 7, 1938.

*Michael V. Blansfield* and *Harry M. Albert,* for the appellant (plaintiff).

*John H. Cassidy,* with whom was *Charles R. Summa,* for the appellee (defendant).

MALTBIE, C. J. The compensation commissioner made a finding and award in favor of the plaintiff. The defendant made a motion for correction of the finding which covered every phase of the claim. With the motion the defendant filed a certified copy of all the evidence, covering seventy-eight pages of legal cap paper, without in any way designating the portions relevant and material to the corrections sought. The commissioner denied the motion on the ground that the defendant had not complied with § 259 of the Practice Book, which provides that when a motion is made to correct a commissioner's finding it shall be accompanied by "such portions of the evidence as he [the moving party] deems relevant and material to the corrections asked for." The defendant then appealed to the Superior Court assigning the denial of the motion to correct as one reason of appeal, but also claiming that certain conclusions of the commissioner were not supported by the subordinate facts found. The plaintiff moved to erase the appeal and when that motion was denied moved for judgment, basing these motions upon the claim that, in absence of the evidence, the appeal presented nothing for the considera-

tion of the court. There were grounds of appeal presenting issues of law which the court could consider in the absence of the evidence and the rulings denying the motions were correct.

The appeal was then heard and the trial court concluded that the commissioner should have acted upon the motion and remanded the case to him to do so. Section 259 of the Practice Book does not expressly require that an excerpt of the evidence relevant and material to each paragraph of a motion to correct shall be attached to the motion. The purpose of the rule is "to provide that all the evidence material to the proposed correction of a finding shall be before the Superior Court and to save the parties the expense of printing evidence which has no bearing upon the corrections requested." *Kenyon* v. *Swift Service Corp.,* 121 Conn. 274, 278, 184 Atl. 643. With reference to the situation before the court in that case we said (p. 279): "In the present case, practically the entire evidence taken by the commissioner was material upon the corrections requested. To have chopped it up into ninety-two separate headings would have been to confuse rather than aid the consideration of the corrections requested, and, in the event of an appeal, to produce an unnecessarily involved and cumbrous record." The question whether, in this case, the situation was such as to warrant the commissioner in refusing to decide the motion because the defendant filed the entire evidence, was within the discretion of the trial court with which, unless improperly exercised, we cannot interfere. That it did improperly exercise its discretion we cannot hold.

The trial court, in giving effect to its conclusion, sustained the appeal and remanded the case to the commissioner to consider and act upon the motion to correct and on November 17, 1936, formal judgment

to that effect was entered. The commissioner then acted upon the motion, striking out one paragraph of his finding but otherwise denying it. The effect of this action was to correct the record of the appeal which was already pending in the Supreme Court and the ruling was in no sense a separate and independent award requiring another appeal in order to present the case in the Supreme Court.

The defendant filed, in the Superior Court, amended reasons of appeal. The plaintiff moved to strike these from the record on the ground that, as no appeal to this court had been taken from the judgment sustaining the appeal to the Superior Court and remanding the case to the commissioner, that judgment terminated the case. This motion was denied and the court, another judge than the one who caused the judgment to enter presiding, on February 10, 1937, directed that, without change in substance, the form of the judgment be altered so that it would purport to be an order to the commissioner to pass upon the motion to correct and not a judgment sustaining the appeal; and subsequently the court made an order to that effect dated back to the day the judgment was entered. Even if the judgment be regarded as one which was final so that it would have concluded the rights of the parties, and not merely interlocutory in its nature, the effect in change of form was to open it and substitute an order for it. This was done at the same term of court at which judgment was entered; General Statutes, Cum. Sup. 1935, § 1624c; and the court had the right to take such action at any time during that term. *Lusas* v. *St. Patrick's Roman Catholic Church Corp.*, 123 Conn. 166, 169, 193 Atl. 204; *Kaiser* v. *Second National Bank of New Haven*, 123 Conn. 248, 255, 193 Atl. 761.

At this time the commissioner had already acted

upon the motion to correct the finding. The change of the judgment to an order was made as the result of a motion by the plaintiff to strike out the amended reasons of appeal and the order was incident to and directly involved in the decision upon the motion. The plaintiff is in no position to claim that the change was without notice to him and an opportunity to be heard. The appeal then came on for hearing. The court made an order in which it directed that the commissioner reconsider certain paragraphs in his finding so as to set out certain facts bearing upon the principal issue in the case, whether the defendant was within that provision of the Compensation Act excepting any employer "having regularly less than five employees." General Statutes, § 5225. From this order the plaintiff filed an appeal to this court but, upon the defendant's motion, we erased the appeal upon the ground that no judgment had been entered in the case from which an appeal could be taken. *France* v. *Munson,* 123 Conn. 102, 192 Atl. 706.

In its memorandum of decision returning the case to the commissioner for further hearing, the trial court discussed somewhat the burden of proof where an employer claims to be within the exception to the act. Whether it was right or wrong was of no consequence, because the commissioner discussed the matter in his amplification and correction of the finding made as a result of the order and the record does not disclose that he applied any erroneous rule of law in finding the facts. When the case was remanded to him the commissioner held a further hearing and filed an amplification and correction of the finding and award which enlarged and changed certain paragraphs of the finding and concluded with a statement that the finding and award before made, but as amplified and corrected by his present ruling, was reaffirmed and ratified. When

the case was remanded to him the commissioner was not directed to make a new award but only to amplify the finding he had made, the original appeal was still pending and no judgment determining it had been entered. There was no occasion for the commissioner to make a new award and the ruling he made cannot in any sense be so regarded. The defendant was not required to take another appeal. The ruling was, in effect, no more than a correction of the finding previously made so as to lay a proper basis for the consideration of the claim of the parties as to the issue involved in the appeal already taken.

Thereafter the matter came on for a hearing and the trial court sustained the appeal and set aside the award of the commissioner on the ground that the defendant was not within the act because he had "regularly less than five employees." From that judgment the plaintiff has appealed. The question before us is whether the trial court was correct in its ruling that the defendant was within the exception to the act. One of the plaintiff's assignments of error is that the trial court erred in ruling that the commissioner was not justified in concluding from all the evidence that the defendant had not regularly less than five employees. This assignment is too general to present to us any claim for correction in the commissioner's finding or error in the decision of the trial court correcting that finding. In considering the question of law presented we proceed, then, upon the basis of the commissioner's original finding, with the corrections and additions later made by him, and certain corrections made by the trial court. The question is whether the trial court was correct in deciding that upon the facts found the commissioner could reasonably have concluded that the defendant was not within the exception to the act.

The act excepts from its provisions employers "having regularly less than five employees" unless they voluntarily come within its operation. General Statutes, §§ 5225, 5227. This exception refers to "the size of the group of persons employed throughout the period in question." *Schneider* v. *Raymond,* 103 Conn. 49, 53, 130 Atl. 73. It "looks primarily to the number of employees the particular employer has and only incidentally to the circumstances of the employment of each." *Fisher* v. *Sargent,* 117 Conn. 496, 497, 168 Atl. 877. To be counted within the group one must be an employee within the terms of the act. *Chandler* v. *Harris,* 47 Ga. App. 535, 171 S. E. 174; *Cauchon* v. *Gladstone,* 104 Vt. 357, 160 Atl. 254. The word "regularly" implies a practice and so necessarily the number employed over some period of time must be regarded; and, as the statute is silent as to the length of that period, it contemplates a time reasonable under the circumstances of the case. In the situation before us the commissioner adopted a period of about six months before the accident and this would seem to be eminently just.

We said in *Green* v. *Benedict,* 102 Conn. 1, 3, 128 Atl. 20, that "Literally, the word 'regularly' means in accordance with some constant or periodic rule or practice"; but in that case we did not adopt that definition as applicable to the facts we were considering, for had we done so, most of the discussion in the opinion would have been entirely unnecessary. In common usage a practice is often spoken of as "regular" although not always followed and the word admits of occasional variation. Thus a doctor has regular office hours but the exigencies of his practice may prevent him at times from keeping them; and one may be a regular attendant at church although he occasionally absents himself. The question before us is whether the Legislature used

the word "regularly" in its strict sense or with its other not uncommon, though inexact, significance. If the literal meaning of the word is adopted difficulties in the practical operation of the law are at once apparent. A great many persons who continuously employ one or only one or two, occasionally employ more. Thus a farmer, having, say, two in his continuous employment, may find it necessary to shingle his barn and for a few days employ three additional men for that work; and many similar situations could be imagined. If employers by the adventitious fact that temporarily they employ five or more are thereby brought within the act and so continue for some indefinite time in the future, an inconstant and fluctuating test of the application of the law is established; the employer is likely to be caught unawares; and the right of an employee to compensation will be governed not by any customary practice of his employer but by the chance needs of the occasion. The Legislature could hardly have intended such a result.

The exception followed a provision in the act proposed by the committee which, under legislative authority, had been studying the matter and which reported to the General Assembly in 1913. The proposed act was more restricted in its application than that adopted but, as applicable to our discussion, its phraseology was that it should not affect the liability of an employer to workmen when he is "employing less than seven workmen engaged in manual labor regularly in the same business." The more condensed language of the act as adopted apparently was intended to carry out the intent of the proposed act as to the exemption, and the terms of that act suggest that the mere occasional employment of five or more was not designed to take an employer out of the exempted class. Some light upon the legislative intent is also

thrown by a provision in § 5256 of the General Statutes which requires certain provisions to be inserted in insurance policies covering liability under the act and which concludes: "Nothing herein contained shall prevent the issuance of an insurance policy insuring any employer having ordinarily and regularly less than five employees against such liability under part B as he may incur by reason of employing five or more employees at irregular intervals or from time to time." Whatever this provision may mean, and it is difficult to fathom it, two things are suggested by it: The words "ordinarily" and "regularly" are used as correlatives; and one who has "ordinarily and regularly less than five employees" is considered as not within the act to the same extent as one who regularly employs five or more.

If we turn to decisions in other states considering like provisions we find some apparent disagreement, but if the nature of the situations before the courts is considered that disagreement largely disappears. See cases cited in Note, 81 A. L. R. 1232, and supplemental notes. Some of the cases present a situation rather the reverse of the one before us, where in the ordinary conduct of an employer's business he employs, though intermittently, the number required to make the act applicable to him but when the accident occurred he was not employing that many. *Mobile Liners, Inc.* v. *McConnell,* 220 Ala. 562, 126 So. 626; *Employers Liability Assur. Corp.* v. *Hunter,* 184 Ga. 196, 190 S. E. 598; *Cauchon* v. *Gladstone,* supra.

In *Palle* v. *Industrial Commission,* 79 Utah 47, 7 Pac. (2d) 284, the court, while under the peculiar provisions of the act in force in that state it held the respondents to be within it, states (p. 60): "The ordinary and popular meaning of the word or term 'regularly' as used in the statute, that an employer is within the

act who 'has in his service three or more workmen or operatives regularly employed in the same business,' etc., when considered in connection with the phrase in which it is used, is not synonymous with 'continuous' or 'continuously' or 'occasionally' and connotes some uniformity in the practice of the employment of three or more workmen in the business and that an occasional increase in the number of workmen less than three for a few days for some unusual occasion would not change the status of the employer; that the terms connote, according to the rule, usually, systematically, methodically." See also *LaCroix* v. *Frechette*, 50 R. I. 90, 93, 145 Atl. 314. In *Kelley* v. *Haylock*, 163 Wis. 326, 157 N. W. 1094, the court considered a provision in the act which made it applicable to any employer who had four or more employees in a common employment; it appeared that the employer, who also filled silos for others, had less than four employees except at haying time and when he was filling his silo; the court held that he was not within the act, saying (p. 328): "In legislating with reference to compensation to employees in industrial occupations the idea was to compensate employees in reasonably fixed kinds of employment, for the act required every employer coming under it to take out liability insurance or satisfy the industrial commission of his financial solvency and secure a certificate of exemption, or else forfeit $25 for every day he fails to do so. This provision alone shows that mere temporary employment of four or more men for a specific occasion was not intended to bring the employer under the act. Nearly every farmer is likely at some time of the year to employ four or more men for a short time—such as harvesting, berry picking, barn raising, corn shredding, silo filling, threshing, and occasional tobacco work. The same is true of nearly every other man of affairs who

is not in any regular business in which four or more employees are engaged. The legislature did not contemplate that mere temporary though regularly recurring employment brought the employer within the act. Its language must be taken in its ordinary and usual significance. In ordinary language when it is said that an employer employs four or more employees in a common employment it is meant that he usually does so, or that he does so most of the time, so that such employment becomes the rule and not the exception. The act operated upon and was intended to include only such employers as ordinarily or for some considerable length of time employ four or more employees in a common employment."

Subsequent to that decision the Legislature changed the act and the later decision of the court in *Guse* v. *Industrial Commission*, 189 Wis. 471, 482, 205 N. W. 428, 208 N. W. 493, was an application of the amendment to the situation before the court. In *Adams* v. *Roth*, 230 App. Div. (N. Y.) 216, 43 N. Y. S. 454, the court declined to pass upon the question whether the act applied to an employer under a provision which brought within it one who employed four or more workmen or operatives regularly, but it stated (p. 218): "We hold that it is not necessary that four men should be employed during the entire year, but it is sufficient if such employment continues through a reasonably definite period of time, and is not casual."

Considering the terms of the act and in the light of these decisions we conclude that the exception in our act of one who has "regularly less than five employees" does not mean that to be exempt from it an employer must uniformly and without exception have employed less than five for a reasonable period before an accident to one of his employees, and the fact that he employs

for some temporary purpose five or more does not necessarily bring him within the act.

The defendant owns a farm and in connection therewith two horses; he also owns a considerable amount of real estate in this state with the buildings thereon, including several tenement houses. He employed as many men as necessary to repair his buildings, collect rent, and operate the farm. The plaintiff had been regularly employed by the defendant for about twenty-eight years prior to his injury on October 5, 1935. Each year the defendant cut the hay on his farm and for many years during the haying season employed more than five men. During the six month period before the injury to the plaintiff, thirteen different men worked for him, the group varying from two to seven at different intervals. The trial court concluded that in addition to the plaintiff three of the employees are to be regarded as within the group to be counted in determining whether the defendant had regularly five or more employees but that none of the others were.

From the finding as corrected the situation with reference to these other men was as follows: One was a plumber and another his helper; the plumber was called upon from time to time to do plumbing work on the defendant's various properties; he was hired by the defendant as would be any plumber; he was in the general plumbing business and worked for various customers; the defendant did not direct the work; the plumber employed his helper, who was chosen and paid by him and was under his control; he charged the defendant for the work he did on a labor and material basis. Clearly the plumber was an independent contractor; *Francis* v. *Franklin Cafeteria, Inc.,* 123 Conn. 320, 323, 195 Atl. 198; and the trial court was correct in holding that neither the plumber nor his helper could properly be included in determining the

group of employees of the defendant. Two other men who did work for the defendant were a tenant in one of his properties who offered to and did put a new roof on a garage but received no pay therefor, and a friend of his who gave assistance gratuitously. These men were evidently mere volunteers and had no expectation of receiving compensation for the work they did. They were not employees within the contemplation of the act. *Gibbs* v. *Downs*, 94 Conn. 487, 109 Atl. 170. Two others who worked for the defendant were a painter and a paperhanger. The trial court in its memorandum of decision states that it appears from the finding that each of them was engaged for only one small job in May. All the commissioner actually found was that they were employed in May, and the trial court evidently ascertained the nature of the employment from the evidence which it was required to examine by the reasons of appeal seeking corrections of the finding. It was not, however, asked to correct or to add to the finding in this respect and the case stands upon the facts as stated by the commissioner. Two others who worked for the defendant were engaged for about two weeks in July for the haying on the farm and another was also engaged for this time and stayed on for a few days in August to cut brush.

To sum up, the case is one where the defendant regularly had four employees; in May he had a painter and paperhanger working for him, how long or what the nature of the work not appearing; in July he employed three others for about two weeks for his haying and one of these stayed on a few days into August to cut brush. The occasions when the defendant had five or more employees are too few and covered too short a space of time reasonably to be held to bring the defendant within the class of employers having regularly

five or more employees. The conclusion of the trial court was correct.

There is no error.

In this opinion the other judges concurred.