COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Humphreys and Clements
Argued at Salem, Virginia


VIRGINIA UNINSURED
 EMPLOYER'S FUND
                                    MEMORANDUM OPINION[*] BY
v.   Record No. 1958-02-3          JUDGE ROBERT J. HUMPHREYS
                                         MARCH 25, 2003
TRACY SCOTT NUNN AND
 THOMAS W. MOREHEAD, d/b/a
 MOREHEAD TRUCKING


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        James W. Osborne, Special Counsel and
        Assistant Attorney General (Jerry W. Kilgore,
        Attorney General; John J. Beall, Jr., Senior
        Assistant Attorney General, on brief), for
        appellant.

        No brief or argument for appellees.


    The Virginia Uninsured Employer's Fund ("Fund") appeals a

decision of the Virginia Workers' Compensation Commission finding

that Thomas W. Morehead, d/b/a Morehead Trucking, was subject to

the commission's jurisdiction because he regularly had in service

three or more employees.  The Fund further contends that, based on

this decision, the commission erred in awarding Tracy Scott Nunn

temporary total disability benefits and medical benefits, and

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.  Further, because this opinion has
no precedential value, we recite only those facts essential to
our holding.

assessing against Morehead a $500 fine, pursuant to Code § 65.2-805, for failing to properly insure his workers' compensation liability.  For the reasons that follow, we affirm the decision of the commission.

On January 12, 2001, Nunn was employed by Morehead's sole proprietorship as a driver of a milk tanker truck.  On that date, Nunn lost control of his truck while driving and the truck overturned.  Nunn suffered an injury to his lower back and left shoulder.  Nunn filed a Claim for Benefits with the commission on July 23, 2001.  Morehead defended the claim on the grounds that his partnership was not subject to the commission's jurisdiction because he did not have in regular service three or more employees.[1]

The deputy commissioner found that Morehead was subject to the commission's jurisdiction, finding that Nunn and James Robertson were "employees regularly in service" and that a "part-time" employee, Cecil Melvin, was also an employee "regularly in service," as defined by the Act.  Accordingly, after determining that Nunn's injury arose out of employment, the deputy commissioner awarded Nunn benefits and assessed a $500 fine against Morehead, pursuant to Code §§ 65.2-804 and -805, for

---

[1] Morehead testified that he was the owner of the business, in partnership with his mother.  Members of a partnership are excluded from the definition of an "employee" under the Act, unless they specifically elect to be included.  See Code § 65.2-101 "Employee" (1)(n).

-

failing to properly insure his workers' compensation liability.[2]
The commission affirmed, finding that the testimony established
Morehead paid three employees per month, during the months of
September through December of 2000.

It is this decision that the Fund appeals.  The Fund contends
that the commission erred in failing to properly consider
Morehead's "established mode of business," which was to employ
only two employees at any given time.  The Fund argues that a "Net
Payroll Totals" chart established that Morehead employed only two
employees during the months of January through August of 2000 and
that he only employed one of the employees at issue, Cecil Melvin,
on a temporary basis.  The Fund further contends that the
commission erred in affirming the decision of the deputy
commissioner because the deputy commissioner "failed in its duty
to make a fair and complete record."  We disagree.

> Under Code § 65.2-101, employers with fewer
> than three employees are exempt from
> coverage under the Workers' Compensation
> Act.  The employer has the burden of
> producing evidence that it is exempt from
> coverage.  Craddock Moving & Storage Co. v.
> Settles, 16 Va. App. 1, 2, 427 S.E.2d 428,
> 429 (1993), aff'd per curiam, 247 Va. 165,
> 440 S.E.2d 613 (1994).  "What constitutes an
> employee is a question of law, but whether
> the facts bring a person within the law's
> designation, is usually a question of fact."
> Baker v. Nussman, 152 Va. 293, 298, 147 S.E.

---

[2] The Fund raises no issue on appeal concerning the
propriety of the commission's determination that Nunn's injury
arose out of employment and, thus, warranted the awarded
benefits.

-

> 246, 247 (1929); see also Metropolitan
> Cleaning Corp., Inc. v. Crawley, 14 Va. App.
> 261, 264, 416 S.E.2d 35, 37 (1992) (en
> banc). We are bound by the commission's
> findings of fact if those findings are
> supported by credible evidence. Lynch v.
> Lee, 19 Va. App. 230, 234, 450 S.E.2d 391,
> 393 (1994). On appeal, we construe the
> evidence in the light most favorable to the
> employer, the party prevailing below.
> Whitlock v. Whitlock Mechanical/Check
> Services, Inc., 25 Va. App. 470, 479, 489
> S.E.2d 687, 692 (1997).

Osborne v. Forner, 36 Va. App. 91, 95, 548 S.E.2d 270, 272

(2001) (footnote omitted).

> Whether a person is an "employee" and
> whether an employer has three or more
> employees "regularly in service" are pivotal
> determinations in deciding if an employer is
> subject to the Act. An "employee" is
> defined by the Act as follows: "'[E]mployee'
> includes every person . . . in the service
> of another under any contract of hire or
> apprenticeship, written or implied, except
> one whose employment is not in the usual
> course of the trade, business, occupation or
> profession of the employer." Code § 65.1-4
> [now Code § 65.2-101]. This statute has
> been construed to mean that any person hired
> by the employer to work in the usual course
> of the employer's business is an "employee"
> under the Act regardless of how often or for
> how long he may be employed.

Cotman v. Green, 4 Va. App. 256, 258, 356 S.E.2d 447, 448

(1987). Thus, "part-time as well as full-time employees

'regularly in service' must be considered in determining whether

an employer has at least three employees." Id. at 259, 356

S.E.2d at 448.

-

In determining whether an employer has three or more employees "regularly in service," "the focus shifts to the character of the business and away from the character of the employment relationship.  The number of persons used to carry out the established mode of performing the work of the business is determinative even though the work may be recurrent instead of constant."  Id. (citation omitted).

> The term "regularly" implies a "practice," France v. Munson, 125 Conn. 22, 3 A.2d 78, 81 (Conn. 1938), or a "constant or periodic custom," Mathers v. Sellers, 113 So.2d 443, 445 (Fla. Dist. Ct. App. 1959), of employment.  Therefore, we look for "regularly-recurring periods" of employing the requisite number of persons over some reasonable period of time.  [4 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 74.02 (2000)]; see Lingo v. Crews, 253 Ala. 227, 43 So.2d 815, 815-16 (Ala. 1950); LaPoint v. Barton, 57 Ala. App. 352, 328 So.2d 605, 607 (Ala. Civ. App. 1976); France, 3 A.2d at 81; Harding v. Plumley, 329 S.C. 580, 496 S.E.2d 29, 32 (S.C. Ct. App. 1998).  In order for the employer to be subject to the Act, the recurring periods of employing the requisite number of employees should be the rule and not the exception.  See France, 3 A.2d at 83; Sudler v. Sun Oil Co., 227 So.2d 482, 484 (Fla. 1969).  Stated differently, an employer's status under the Workers' Compensation Act should not fluctuate between being subject to the Act and being exempt from it.  Cotman, 4 Va. App. at 259, 356 S.E.2d at 448-49; Larson, supra, § 74.02.

Osborne, 36 Va. App. at 96, 548 S.E.2d at 272.  Thus, "where an employer temporarily or occasionally employs a third person, the employer will not be subject to the provisions of the Act."  Id.

-

at 97, 548 S.E.2d at 273.  Indeed, the Act excludes "casual employees" from coverage.  Code § 65.2-101 "Employee" (2)(e). The Supreme Court of Virginia has recognized that employment is "casual when not permanent nor periodically regular, but occasional, or by chance, and not in the usual course of the employer's trade or business."  Mims v. McCoy, 219 Va. 616, 619, 248 S.E.2d 817, 818 (1978).

Applying these principles to the instant case, we hold that the record supports the commission's determination that Morehead had regularly in service, three or more employees at the time of Nunn's accident.  Morehead testified that he owned three trucks. Two regular employees would drive the trucks on the days they worked, and he would fill in as a driver on their days off. Indeed, Morehead does not contest the fact that he regularly employed at least two employees during the twelve months of 2000, and January of 2001.

Specifically, Morehead testified that Melvin and Robertson worked as drivers during the months of January through May of 2000.  At that time, Melvin became unable to work due to prostate cancer.  Thus, Robertson and a new hire, Phillip Ramsey, worked from June of 2000 through November of 2000.  Ramsey left the company in November, so Robertson and another new hire, Nunn, worked in December of 2000 and January of 2001.

However, although Melvin did not work for the months of June, July and August due to his illness, Melvin returned to work for

-

Morehead in September of 2000 on a "sporadic" basis.[3]  Morehead

testified that his arrangement with Melvin was that Melvin would

work if he "[felt] like working . . . and if he [didn't] feel like

working, he [didn't] work."  During the times when Melvin worked,

he performed the same work as the other drivers.  Morehead

testified that he paid Melvin on a "10 day[] basis," in that he

would pay Melvin for ten days of work once he accumulated that

many days of work.  The evidence demonstrated that Melvin received

a check for ten days of work in September, October, November and

December of 2000.[4]  Morehead testified further that he intended to

hire Nunn as a replacement for both Ramsey and Melvin.

Nevertheless, the record demonstrates that after Nunn's accident

in January of 2001, Melvin continued to work for Morehead, as a

"fill-in" for Nunn.

The evidence demonstrated on this record clearly supported

the commission's factual determination that, as an "established

mode of performing the work of the business," Morehead regularly

---

[3] Nunn testified that Morehead also employed a man by the
name of "Dave" to serve as a relief driver.  Morehead denied
that anyone named "Dave" worked for him during the time at
issue.  Accordingly, the commission did not include "Dave's"
employment, or lack thereof, in its determination.  Moreover,
the commission made no factual finding as to whether "Dave" was
employed by Morehead, nor in what capacity he was employed.
Thus, we do not consider this evidence in our analysis.

[4] Although he was issued a check in December, Morehead
testified that Melvin did not actually work ten days in December
due to his illness.

-

employed three individuals.  In particular, Morehead utilized three individuals to maintain his business - driving his delivery trucks – during the months of September, October, November and December of 2000, as well as January of 2001.  Although Melvin worked only "sporadically," due to his health condition, the record demonstrates that it was Morehead's "mode of business" to utilize Melvin's services on a reoccurring or regular basis.  Indeed, the evidence established that Morehead hired Nunn in December of 2000 with the specific intent of "replacing" Ramsey and Melvin.  Two men whose services were thus, by logical implication, necessary to the operation of Morehead's business.  Furthermore, Morehead continued his practice of relying on Melvin's services by contacting Melvin to work, as a fill-in, after Nunn's accident.

Therefore, on the peculiar facts of this case, we find that the commission properly considered the evidence submitted concerning the 13-month time period leading up to the accident and properly determined, based upon that evidence, that Morehead's use of Melvin as a third employee was the "rule," rather than the exception, at the time Nunn's injury occurred.  Thus, we find no error in the commission's determination that, at the time of Nunn's injury, Morehead had in regular service three or more employees, bringing his establishment within the jurisdiction of the commission.  We do not address the Fund's contention that the deputy commissioner "failed in its duty to make a fair and

-

complete record," because the Fund failed to raise this specific claim as a basis for its appeal to the full commission.[5]  Thus, this issue was not considered by the full commission. Accordingly, we will not consider this argument on appeal.  See Berner v. Mills Ex Rel. Estate of Mills, 38 Va. App. 11, 18, 560 S.E.2d 925, 928 (2002); Rule 5A:18.

     For the above stated reasons, we affirm the decision of the commission.

Affirmed.

---

     [5] Instead, the Fund merely argued that the deputy commissioner failed to properly consider and analyze the entire body of evidence.  Specifically, the Fund argued the deputy commissioner erred in "scrutiniz[ing] only 3-4 unusual months," and failing to consider the 9-10 month period leading up to those 3-4 months.  Nevertheless, our review of the record reveals that the Fund's argument in this regard is without merit.  Indeed, the record demonstrates that the deputy commissioner and the full commission clearly considered Morehead's business practices during the entire 13-month period leading up to the injury, in finding that, at least as of September of 2000, Morehead began an "established" practice of relying on Melvin as a third employee.

-