EILEEN SMITH *v.* ANTHEA YURKOVSKY ET AL.
(SC 16740)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 18—officially released September 23, 2003

*Edward M. Gillis*, for the appellant (plaintiff).

*Robert Irving Miller, Jr.*, for the appellees (defendants).

Opinion

VERTEFEUILLE, J. The sole issue in this appeal is whether the workers' compensation review board (board) properly interpreted General Statutes § 31-275 (9) (B) (iv)[1] as requiring a domestic worker to work an average of more than twenty-six hours per week for the twenty-six week period preceding the date of his or her injury in order to be considered an "employee" within the meaning of that statute, thereby entitling the worker to recover benefits under the Workers' Compensation Act (act), General Statutes § 31-275 et seq. The plaintiff, Eileen Smith, claims that she had worked more than twenty-six hours per week for ten out of the sixteen weeks prior to sustaining an injury while working for the defendants, Anthea Yurkovsky and her son, Christopher Yurkovsky, and that she was, therefore, "regularly employed" more than twenty-six hours per week as required by § 31-275 (9) (B) (iv). We conclude that, in order to be regularly employed pursuant to § 31-275 (9)

[1] General Statutes § 31-275 (9) (B) provides in relevant part: " 'Employee' shall not be construed to include . . . (iv) [a]ny person engaged in any type of service in or about a private dwelling provided he is not regularly employed by the owner or occupier over twenty-six hours per week . . . ."

(B) (iv), a person must work more than twenty-six hours per week during the majority of the fifty-two weeks preceding the date of his or her injury. We therefore affirm the decision of the board vacating the decision of the workers' compensation commissioner for the third district (commissioner) that had found that the plaintiff was an employee of the defendants pursuant to § 31-275 (9) (B) (iv) at the time of her injury.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. The plaintiff was employed by the defendants beginning July 1, 1995, as a part-time home health aide[2] to care for Anthea Yurkovsky,[3] who suffered from Alzheimer's disease, was unable to care for herself and required round-the-clock supervision. The plaintiff's tasks during her employment included feeding Anthea Yurkovsky, assisting her to exercise, and helping her to bed. Initially, the plaintiff worked between four to nine hours per week, however, her hours gradually increased over time. The plaintiff's hours increased substantially during the tax preparation season, namely, from January until mid-April of each year, due to the fact that Christopher Yurkovsky was employed as a manager at a tax return preparation service. He, therefore, required more assistance from the plaintiff in caring for his mother during the tax preparation season.

On April 16, 1998, the plaintiff allegedly sustained an injury to her lower back during the course of her employment with the defendants. She subsequently filed a workers' compensation claim against the defendants. They denied liability, and contended that the plaintiff was not regularly employed more than twenty-six hours per week as required by § 31-275 (9) (B) (iv),

[2] The plaintiff was not a licensed practical nurse or a registered nurse.
[3] The defendants also employed three additional employees to care for Anthea Yurkovsky.

and therefore was not subject to coverage under the act.[4]

After a hearing, the commissioner found that the plaintiff had worked an average of 29.38 hours per week for nine of the sixteen weeks during the 1998 tax preparation season. The commissioner then concluded that the plaintiff was regularly employed by the defendants within the meaning of § 31-275 (9) (B) (iv).

The defendants appealed from the commissioner's decision to the board, which vacated the commissioner's ruling. The majority of the board concluded that, in order to determine whether the plaintiff was regularly employed pursuant to § 31-275 (9) (B) (iv), the commissioner should have determined the average number of hours that the plaintiff had worked during the twenty-six weeks preceding the date of injury.[5] The board therefore remanded the matter to the commissioner in order to determine the plaintiff's status as an employee based on the average number of hours per week that she had worked during the twenty-six weeks prior to the date of injury. The plaintiff thereafter appealed from the decision of the board to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

I

Before we address the merits of the plaintiff's claim, we must determine whether the board's decision, which vacated the commissioner's decision and remanded the case to the commissioner for further proceedings, constitutes an appealable final decision pursuant to General Statutes § 31-301b. "Although neither of the parties raised the question of whether the judgment of the

[4] The defendants had not obtained workers' compensation insurance.

[5] A dissenting commissioner on the board concluded that the hours the plaintiff had worked should have been averaged over the fifty-two weeks preceding the date of her injury.

[board] . . . was a final judgment, we decide the question sua sponte because it invokes this court's subject matter jurisdiction over the plaintiff's appeal." *Cheryl Terry Enterprises, Ltd.* v. *Hartford,* 262 Conn. 240, 245 n.10, 811 A.2d 1272 (2002). We conclude that the decision of the board is appealable.

"Section 31-301b provides that [a]ny party aggrieved by the decision of the [board] upon any question or questions of law arising in the proceedings may appeal the decision of the [board] to the Appellate Court. We have stated, however, that appellate review of disputed claims of law and fact ordinarily must await the rendering of a final judgment by the . . . [board]. . . . The test that determines whether such a decision is a final judgment turns on the scope of the proceedings on remand: if such further proceedings are merely ministerial, the decision is an appealable final judgment, but if further proceedings will require the exercise of independent judgment or discretion and the taking of additional evidence, the appeal is premature and must be dismissed." (Citation omitted; internal quotation marks omitted.) *Hall* v. *Gilbert & Bennett Mfg. Co.,* 241 Conn. 282, 293, 695 A.2d 1051 (1997); accord *Szudora* v. *Fairfield,* 214 Conn. 552, 556, 573 A.2d 1 (1990).

In the present case, the board remanded the decision to the commissioner directing her to calculate the plaintiff's average weekly working hours during the twenty-six week period preceding the date of her injury. The commissioner therefore must undertake a basic mathematical computation. The proceedings on remand therefore would be ministerial and would not require the exercise of independent judgment or discretion. See *Szudora* v. *Fairfield,* supra, 214 Conn. 557 (decision of then compensation review division was appealable final judgment because remand order required only ministerial, noncontroversial compilation of salary informa-

tion). Accordingly, we conclude that the board's decision is an appealable final decision.

## II

The plaintiff claims that the board improperly concluded that the commissioner should have averaged her weekly work hours during the twenty-six week period prior to the date of injury to determine whether the plaintiff was regularly employed pursuant to § 31-275 (9) (B) (iv). We conclude that, in order to determine whether the plaintiff was "regularly employed . . . over twenty-six hours per week"; General Statutes § 31-275 (9) (B) (iv); the commissioner should have determined whether the plaintiff had worked more than twenty-six hours per week during the majority of the fifty-two weeks prior to her injury. We reject the use of averaging as a means to determine regular employment, and we conclude that fifty-two weeks—one full year— is the period of time that is reasonable for purposes of measuring the hours that the plaintiff worked in order to determine whether she was "regularly employed" under the act.

We begin by setting forth the standard of review that will govern our analysis of this issue. "[T]he plaintiff's claim presents a question of statutory interpretation over which our review is plenary." (Internal quotation marks omitted.) *W & D Acquisition, LLC* v. *First Union National Bank*, 262 Conn. 704, 709, 817 A.2d 91 (2003); accord *State* v. *Ehlers*, 252 Conn. 579, 589, 750 A.2d 1079 (2000). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history

and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003).

We also are bound by our prior case law concerning interpretation of the act. "Although we recognize that the [act] should be broadly construed to accomplish its humanitarian purpose . . . its remedial purpose can-

not transcend its statutorily defined jurisdictional boundaries." (Internal quotation marks omitted.) *Gianquitti* v. *Sheppard*, 53 Conn. App. 72, 81, 728 A.2d 1133 (1999); accord *Kinney* v. *State*, 213 Conn. 54, 58–59, 566 A.2d 670 (1989). "The entire statutory scheme of the [act] is directed toward those who are in the employer-employee relationship as those terms are defined in the act and discussed in our cases. That relationship is threshold to the rights and benefits under the act; a claimant . . . who is not an employee has no right under this statute to claim for and be awarded benefits. . . . [A claimant] may invoke the remedy provided under the [act] only if [the claimant], as a matter of law, satisfies the requisite jurisdictional standard of employee as defined by the legislature . . . ." (Citations omitted; internal quotation marks omitted.) *Dowling* v. *Slotnik*, 244 Conn. 781, 800–801, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998); accord *Doe* v. *Yale University*, 252 Conn. 641, 680, 748 A.2d 834 (2000).

Moreover, "[the board's] factual and discretionary determinations are to be accorded considerable weight by the courts. . . . We have determined, [however], that the traditional deference accorded to [the board's] [determination] . . . is unwarranted when the construction of a statute [is at issue and that construction] has not previously been subjected to judicial scrutiny [or to] . . . [the board's] time-tested interpretation . . . ." (Internal quotation marks omitted.) *Hasselt* v. *Lufthansa German Airlines*, 262 Conn. 416, 422, 815 A.2d 94 (2003); *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 289, 819 A.2d 260 (2003). Prior to its decision in the present case, the board had not addressed the definition of "regularly employed" pursuant to § 31-275 (9) (B) (iv). In addition, the issue is one of first impression for Connecticut courts. "Accordingly, we do not

accord any particular deference to the conclusion of the board and exercise plenary review." *Hasselt* v. *Lufthansa German Airlines*, supra, 422.

We begin with the language of the relevant statutory provision, § 31-275 (9) (B), which provides that the term " '[e]mployee' shall not be construed to include . . . (iv) [a]ny person engaged in any type of service in or about a private dwelling provided he is not regularly employed by the *owner or occupier over twenty-six hours per week* . . . ." There is no dispute in the present case that the plaintiff worked in the defendants' private home; thus, the issue we must address is whether the plaintiff was regularly employed for more than twenty-six hours per week.

We must determine what the legislature intended by the phrase "regularly employed" in § 31-275 (9) (B) (iv), which is not defined in the act. While this court previously has not interpreted the term "regularly employed" in the context of § 31-275 (9) (B) (iv), it has interpreted that term as used in another provision of the act that utilized the concept of regular employment in the workers' compensation context.

In *Green* v. *Benedict*, 102 Conn. 1, 3, 128 A. 20 (1925), this court interpreted General Statutes (1918 Rev.) § 5342, a predecessor of General Statutes § 31-151, which was later repealed. See Public Acts 1961, No. 491, § 82. The statute exempted from the coverage of the act "an employer having regularly less than five employees . . . ." General Statutes (1918 Rev.) § 5342. The defendant voluntary association in *Green* undertook the construction of a building using paid employees, the number of whom varied from day to day. *Green* v. *Benedict*, supra, 2. The plaintiff, one of the carpenters employed by the association, was injured during the course of the construction and made a claim for benefits. Id. A workers' compensation commissioner found,

based on "the average daily number of employees," that the association regularly employed fewer than five employees. Id., 5.

On appeal, this court rejected the commissioner's use of averaging to determine "regular" employment, pointing out that, if an employer employed five employees 364 days of the year, but employed only four on the last day of the year, "the average for the year would be less than five. Yet no one could say that he regularly employed less than five during that year." Id. This court noted that "the word 'regularly' means in accordance with some constant or periodic rule or practice"; id., 3; and then looked to a schedule relied upon by the commissioner that indicated the number of employees working each day. Id., 4. The court's analysis of the work schedule revealed that for the twenty-seven days that the building was under construction prior to the plaintiff's injury, the association employed five or more employees for seventeen days, which was more than a majority of the applicable work period. Id., 4–5. The court therefore concluded that "the preponderance of such evidence is in favor of regularity in the employment of five or more." Id., 5. The judgment of the commissioner accordingly was set aside. Id., 6.

This court, in *France* v. *Munson*, 125 Conn. 22, 3 A.2d 78 (1938), interpreted the same statutory provision at issue in *Green*, though the statute had been recodified at General Statutes (1930 Rev.) § 5225. Once again, the court emphasized that regular employment is to be determined by the employer's usual practice for a majority of the applicable time period. Id., 33. The court relied on *Kelley* v. *Haylock*, 163 Wis. 326, 328, 157 N.W. 1094 (1916), which stated that the interpretation of regular employment should be "taken in its ordinary and usual significance. In ordinary language when it is said that an employer employs four or more employees in a common employment *it is meant that he usually*

*does so, or that he does so most of the time, so that
such employment becomes the rule and not the exception.* The [Wisconsin Workmen's Compensation Act]
operated upon and was intended to include only such
employers as ordinarily or for some considerable length
of time employ four or more employees in a common
employment." (Emphasis added.) See *France* v. *Munson,* supra, 33. The court in *France* pointed out that the
fact that the employer therein might have *temporarily*
employed five or more employees would not necessarily
bring him within our act. Id., 33–34.

*France* explicated an additional point that is relevant
to the present case. The court therein stated that the
number of employees must be analyzed "over some
period of time . . . ." Id., 29. Noting that the statute
was silent as to the length of such period, the court
concluded that the statute "contemplates a time reasonable under the circumstances of the case." Id. The court
approved the commissioner's use of a period of six
months prior to the date of injury to the claimant in
that case. Id.

We conclude that the reasoning employed in these
cases regarding the correct method of measuring the
regularity of employment is sound and instructive for
our interpretation of § 31-275 (9) (B) (iv) in the present
case. First, we reject the board's use of averaging to
determine whether the plaintiff was regularly employed
for more than twenty-six hours per week. As the example given in *Green* v. *Benedict,* supra, 102 Conn. 5,
shows, the averaging process is inapt when the purpose
is to determine regularity. Moreover, we note that, when
the legislature has determined that averaging should be
used in the act, it has stated so explicitly. See, e.g.,
General Statutes § 31-310 (a).[6] Instead of employing

---

[6] General Statutes § 31-310 (a) provides in relevant part: "For the purposes
of this chapter, the average weekly wage shall be ascertained by dividing
the total wages received by the injured employee from the employer in
whose service he is injured during the fifty-two calendar weeks immediately

averaging, the commissioner should examine the number of hours actually worked by the plaintiff. We conclude that regular employment is to be determined by the employer's usual practice in using an employee for a majority of the applicable time period. We look to the practice during the majority of the applicable period because we have construed "regular" employment to be that which is done most of the time. When it is said that an employer regularly employs an employee, *"it is meant that he usually does so, or that he does so most of the time, so that such employment becomes the rule and not the exception."* (Emphasis added; internal quotation marks omitted.) *France* v. *Munson*, supra, 125 Conn. 33.

Next, we conclude that the fifty-two weeks prior to the date of the plaintiff's alleged injury is the period of time that is reasonable for determining regular employment under § 31-275 (9) (B) (iv). The commissioner looked only at the number of hours that the plaintiff had worked during the tax preparation season. That period is too short because the object of the analysis is to determine what the *usual* situation is or what is done *most of the time.* See id. The use of the fifty-two week period will moderate the effect of seasonal and temporary impacts on employment status.

We also find a basis for using a fifty-two week period in another section of the act. It is well established that this court seeks guidance in related statutes when construing statutory provisions. See *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 573, 522 A.2d 763 (1987). Section 31-310 (a)[7] of the act provides that an employee's

preceding the week during which he was injured, by the number of calendar weeks during which, or any portion of which, the employee was actually employed by the employer, but, in making the computation, absence for seven consecutive calendar days, although not in the same calendar week, shall be considered as absence for a calendar week. . . ."

[7] See footnote 6 of this opinion for the relevant text of § 31-310 (a).

average weekly wage should be calculated based on the "fifty-two calendar weeks immediately preceding the week during which he was injured . . . ." The legislature's determination that average weekly wage should be calculated based on the fifty-two weeks prior to the date of the injury, presumably to temper seasonal and temporary effects, lends support to our conclusion that an employee's employment status for purposes of the act similarly should be measured over the same time period.

When, on remand to the commissioner, the plaintiff's hours of work are analyzed over the fifty-two week period prior to her injury, it is likely that she will not be found to have been regularly employed within the meaning of § 31-275 (9) (B) (iv) and therefore will not be covered under the act. Such a finding would not be inconsistent with the legislative history of § 31-275 (9) (B) (iv). During the introduction of the legislative bill underlying No. 491 of the 1961 Public Acts, the proponents of the bill addressed the exclusion in the act for part-time household employees. Representative John A. Rand stated: "[This bill] excludes any person working around a domestic household, inside or out, who works for that employer less than [twenty-six] hours per week. In other words, after this [bill] becomes effective, you can have a baby sitter, or a person helping in the house, or a yardman or a lawn mower for up to a little more than three days a week, without being subject to the act." 9 H.R. Proc., Pt. 7, 1961 Spec. Sess., p. 3461. Senator Anthony P. Miller stated that "[t]he definition of employees is amended to eliminate [from] the provisions of the act, any person who performs any type of service in or around a private home provided he is not so employed for more than [twenty-six] hours per week." 9 S. Proc., Pt. 9, 1961 Sess., p. 2972.

We affirm the decision of the board that vacated the commissioner's decision to grant the plaintiff benefits

under the act and to remand the case for further proceedings. On remand, however, the commissioner shall determine whether the plaintiff was regularly employed more than twenty-six hours per week during the majority of the fifty-two weeks immediately preceding the plaintiff's alleged injury rather than during the twenty-six weeks preceding the injury as ordered by the board.

The decision of the board is affirmed and the case is remanded to the board with direction to remand the case to the commissioner for further proceedings in accordance with this opinion.

In this opinion BORDEN, KATZ and PALMER, Js., concurred.

ZARELLA, J., concurring. I agree with the majority's conclusion in this case but write separately only to reaffirm my continuing belief in the plain meaning rule as expressed in my dissenting opinion in *State* v. *Courchesne*, 262 Conn. 537, 597, 618–19, 816 A.2d 562 (2003) (*Zarella, J.*, dissenting).