******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

Prescott, Bright and Eveleigh, Js.

*Syllabus*

The respondent G appealed to this court from the decision of the Workers'
Compensation Review Board affirming the decision of the Workers'
Compensation Commissioner ordering G to pay workers' compensation
benefits to the claimant, who allegedly had sustained injuries in a motor
vehicle accident. Specifically, the motor vehicle accident occurred while
the claimant was being driven by G's girlfriend to G's home where, for
approximately eleven weeks, the claimant had performed certain work
for G, including, inter alia, helping G move his residence, painting, cutting
down trees, splitting and stacking wood, putting up Sheetrock, assisting
with plumbing and laying tile. On appeal, G claimed that the board erred
in concluding that the claimant was an employee of G and entitled to
bring a claim against him individually under the Workers' Compensation
Act (act) (§ 31-275 et seq.) and that G was afforded sufficient due process
to hold him personally liable. *Held*:

1. G could not prevail on his claim that the board erred in affirming the
commissioner's finding that the claimant was an employee of G under
the act, which was based on his claim that because the claimant was
not regularly employed for over twenty-six hours per week, he was
excluded from coverage pursuant to § 31-275 (9) (B) (iv), and that the
commissioner should have examined the hours worked by the claimant
over a fifty-two week applicable period; because the claimant worked
for G for approximately eleven weeks at the time of his injury, using a
fifty-two week period was not a reasonable period of time to determine
if the claimant was regularly employed by G, and, therefore, the commis-
sioner properly examined the eleven week period of employment to
determine what the usual practice was between the claimant and G,
and found that the claimant had a consistent schedule over the eleven
week period, working four to five days per week for approximately six
to ten hours per day, for an average of thirty-eight and one-half hours
per week, which supported the conclusion that the claimant, who was
regularly employed during the applicable time period for more than
twenty-six hours per week, was an employee of G entitled to benefits
under the act.

2. This court declined to consider G's claim that the claimant was a casual
laborer who was excluded from coverage under § 31-275 (9) (B) (ii),
which provides that an employee entitled to benefits under the act shall
not be construed to include any person whose employment is of a casual
nature and who is employed otherwise than for the purposes of the
employer's trade or business; although G claimed that the commissioner
improperly concluded that the claimant was not a casual laborer in light
of the findings that the work at G's house had run its course and that
the working arrangement between G and the claimant was intended to
be short-term, a party seeking to challenge a finding of the commissioner
as incorrect must do so by filing a motion to correct the challenged
finding, and because G did not file a motion to correct any of the
commissioner's findings following the operative finding and award, nor
did he show good cause for failing to file such a motion, the commis-
sioner was deprived of the opportunity to correct the findings or to
supply omitted facts to those conclusions that G claimed were incorrect
or inconsistent.

3. G could not prevail on his claim that he was deprived of due process
because he was not given reasonable notice that the claimant sought
to hold him personally liable and because he was not mailed a notice
of the pro forma formal hearing and the deadline to submit a brief and
proposed findings on the issue of personal liability; upon receipt of a
form 30C that listed G as the claimant's employer, G was put on notice

that he, as an individual, was potentially liable to be found as the employer of the claimant, and even if G was deprived of due process prior to a 2013 finding and award because he was not afforded notice of the pro forma formal hearing and an opportunity to file a brief and proposed findings on the issue of personal liability, G was not entitled to relief in this appeal because the 2013 finding and award was vacated and was not the operative award in this appeal, and G suffered no due process deprivation with regard to a 2015 finding and award that he challenged in this appeal, as he had a full and fair opportunity to be heard on the issue of personal liability when he was given an opportunity to submit a brief and proposed findings to the commissioner prior to the 2015 finding and award.

Argued November 30, 2017—officially released March 20, 2018

*Procedural History*

Appeal from the decision of the Workers' Compensation Commissioner for the Eighth District ordering the respondent Michael Gramegna to pay workers' compensation benefits to the claimant, brought to the Workers' Compensation Review Board, which affirmed the commissioner's decision, and the respondent Michael Gramegna appealed to this court. *Affirmed.*

*John L. Laudati*, with whom, on the brief, was *P. Jo Anne Burgh*, for the appellant (respondent Michael Gramegna).

*Jon D. Golas*, for the appellee (claimant).

*Opinion*

EVELEIGH, J. The respondent, Michael Gramegna[1] appeals from the decision of the Workers' Compensation Review Board (board), affirming the decision of the Workers' Compensation Commissioner for the Eighth District (commissioner) ordering the respondent to pay workers' compensation benefits to the claimant, Victor Melendez, Jr. The respondent claims that the board erred in concluding that (1) the claimant was an employee of the respondent and entitled to bring a claim against him individually under the Workers' Compensation Act (act), General Statutes § 31-275 et seq., and (2) the respondent was afforded sufficient due process to hold him personally liable. We disagree and, accordingly, affirm the decision of the board.

The following facts, as found by the commissioner, and procedural history are relevant to our resolution of this appeal. The claimant met the respondent in the fall of 2011. The claimant worked as a self-employed window washer, as well as a laborer, performing tasks such as roofing, siding and landscaping. At that time, the claimant and his girlfriend were expecting a child and the claimant was looking for additional work. The respondent owned several rental properties in the Manchester area and worked as a remodeling contractor. The respondent was the principal and sole member of two domestic limited liability companies, Fresh Start General Remodeling & Contracting, LLC (Fresh Start), and Fresh Start Realty, LLC, both of which list their business address at 122 Oakland Street in Manchester.

Around the end of October, 2011, the respondent hired the claimant to assist him in moving from his house in Manchester to a new house in Bolton. The claimant helped the respondent pack up items in the Manchester house and helped get the Bolton house ready for the move by cleaning up, painting and making the bathrooms functional. The respondent paid the claimant $8 an hour in cash for his labor because he did not have his own tools and required transportation to and from work each day. For a period of less than two weeks, the claimant assisted the respondent at a Fresh Start remodeling job in Avon. The Avon job was completed by November 17, 2011, and, thereafter, the claimant went back to helping the respondent with the residential move. The respondent and his girlfriend moved into the Bolton house at the end of November, but he continued to employ the claimant to help make the house livable. The claimant performed tasks such as cutting down trees, splitting and stacking firewood, painting, putting up Sheetrock, and assisting with plumbing and laying tile. For a period of approximately eleven weeks, the claimant generally worked four to five days a week for the respondent and earned an average of $300 a week.

On January 23, 2012, the claimant filed workers' compensation claims, pursuant to the act, which stemmed from injuries that he had sustained in a car accident that occurred on January 13, 2012, while he was being driven by the respondent's girlfriend to the respondent's Bolton home where he worked. In accordance with General Statutes § 31-294c (a), the claimant filed three form 30Cs[2] in order to commence the present action: the first directed to the respondent; the second directed to Fresh Start General Remodeling & Contracting, LLC; and the third directed to Fresh Start Realty, LLC.

On September 14, 2012, a formal hearing was held before the commissioner on the issue of compensability of the injuries sustained by the claimant as a result of the motor vehicle accident. Both the claimant and the respondent appeared at the contested hearing and testified as to the nature of the employment relationship, specifically, whether there was an employer-employee relationship between the claimant and Fresh Start on the date of the accident.[3] The record closed on November 26, 2012, with the claimant having submitted a brief. The respondent, however, did not submit a brief. On March 26, 2013, the commissioner issued a finding and award determining that both the respondent and Fresh Start were liable for the claimant's medical bills and certain benefits (2013 finding and award). On October 29, 2013, Fresh Start filed a motion to open the 2013 finding and award on the grounds that notice to it was sent to the incorrect address, and that the respondent was incorrectly named as a respondent. The respondent subsequently filed a brief in support of the motion to open, which claimed that, as a result of this clerical error, he did not understand that the claimant was pursuing the respondent in his personal capacity, he was never afforded the opportunity to fully respond to the claimant's claim and evidence, and he was not notified of the date to submit a brief and proposed findings. On March 18, 2015, the same commissioner, then acting for the eighth district, granted the motion to open, and vacated the 2013 finding and award, which had determined that the respondent was personally liable for the claimant's medical bills and certain benefits.

On April 30, 2015, the respondent submitted proposed findings and a brief on the merits of the personal liability claim. The claimant elected to stand on his prior filings. On that same date, the commissioner deemed the record of the formal hearing closed and the matter submitted to the commissioner for a decision. The commissioner issued a finding and award on June 2, 2015, determining that the respondent was personally liable as the employer for the claimant's medical bills and payment of benefits under the act (2015 finding and award).

On June 22, 2015, the respondent appealed the commissioner's 2015 finding and award to the board. On

June 10, 2016, the board affirmed the 2015 finding and award entered by the commissioner. This appeal followed. Additional facts will be set forth as necessary.

On appeal to this court, the respondent asserts that the claimant failed to prove that he was an employee of the respondent and subject to coverage under the act, and that the respondent was not afforded reasonable due process regarding any notice that he was potentially liable as an individual. In response, the claimant argues that the commissioner correctly found that the claimant was an employee within the meaning of the act, and that the respondent was afforded due process sufficient to hold him personally liable as the employer. We agree with the claimant and, accordingly, affirm the judgment of the board.

I

The respondent first claims that the board erred in affirming the commissioner's finding that the claimant was the respondent's "employee" under the act for two reasons: (1) the claimant did not qualify for compensation under the act because § 31-275 (9) (B) (iv) excludes from the definition of employee any person engaged in any type of service in or about a private dwelling provided he is not "regularly employed" by the owner or occupier over twenty-six hours per week; and (2) the claimant was a casual laborer excluded from compensation by § 31-275 (9) (B) (ii).

As a threshold matter, we note that "[t]he principles that govern our standard of review in workers' compensation appeals are well established. . . . The board sits as an appellate tribunal reviewing the decision of the commissioner. . . . [T]he review . . . of an appeal from the commissioner is not a de novo hearing of the facts. . . . [T]he power and duty of determining the facts rests on the commissioner . . . . [T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . . Where the subordinate facts allow for diverse inferences, the commissioner's selection of the inference to be drawn must stand unless it is based on an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . .

"This court's review of decisions of the board is similarly limited. . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [W]e must interpret [the commissioner's finding] with the goal of sustaining that conclusion in light of all of the other supporting evidence. . . . Once the commissioner makes a factual finding, [we are] bound by that finding if there is evidence in the record to support it." (Internal quotation marks omitted.) *Passalugo* v. *Guida-Seibert Dairy Co.*,

149 Conn. App. 478, 482–83, 91 A.3d 475 (2014). "[Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board." (Internal quotation marks omitted.) *Sullins* v. *United Parcel Service, Inc.*, 315 Conn. 543, 550, 108 A.3d 1110 (2015).

"The entire statutory scheme of the [act] is directed toward those who are in the employer-employee relationship as those terms are defined in the act and discussed in our cases. That relationship is threshold to the rights and benefits under the act; a claimant . . . who is not an employee has no right under this statute to claim for and be awarded benefits." (Internal quotation marks omitted.) *Vanzant* v. *Hall*, 219 Conn. 674, 678, 594 A.2d 967 (1991). Section 31-275 (9) (A) defines "employee" as "any person who . . . (i) [h]as entered into or works under any contract of service or apprenticeship with an employer . . . ." Section 31-275 (9) (B) expressly excludes from this definition in subparagraph (ii) "[o]ne whose employment is of a casual nature and who is employed otherwise than for the purposes of the employer's trade or business," and in subparagraph (iv) "[a]ny person engaged in any type of service in or about a private dwelling provided he is not regularly employed by the owner or occupier over twenty-six hours per week."

A

With this background, we first address the respondent's claim that the claimant was not regularly employed for over twenty-six hours per week and, thus, was excluded from coverage under the act pursuant to § 31-275 (9) (B) (iv). The respondent argues that the commissioner should have examined the hours worked by the claimant over a fifty-two week applicable period as set forth in *Smith* v. *Yurkovsky*, 265 Conn. 816, 830 A.2d 743 (2003).

In *Smith*, our Supreme Court interpreted the phrase "regularly employed" in § 31-275 (9) (B) (iv), and rejected the use of averaging the hours per week worked by the claimant as a means to determine regular employment. Id., 821. "Instead of employing averaging, the commissioner should examine the number of hours actually worked by the [claimant]. We conclude that regular employment is to be determined by the employer's usual practice in using an employee for a majority of the applicable time period. We look to the practice during the majority of the applicable period because we have construed regular employment to be that which is done most of the time. When it is said that an employer regularly employs an employee, *it is meant that he usually does so, or that he does so most of the time, so that such employment becomes the rule and not the exception.*" (Emphasis in original; internal quotation marks omitted.) Id., 826–27. The court also held that

fifty-two weeks, or one full year, was the time period that was reasonable for determining whether the claimant in that case was "regularly employed" under the act. Id., 821.

The present case, however, is distinguishable from *Smith* because of the difference in the length of employment between the claimant in *Smith* and the claimant in the present case. The claimant in *Smith* had worked for the respondents as a part-time home health aide from July 1, 1995, through April 16, 1998; initially, the claimant worked between four to nine hours per week, but her hours increased substantially during tax preparation season each year. Id., 818. The court utilized a fifty-two week period in order to "moderate the effect of seasonal and temporary impacts on employment status." Id., 827. By contrast, the claimant in the present case had only worked for the respondent for approximately eleven weeks at the time of his injury. The holding in *Smith* requires the commissioner to determine what the "usual practice" was or what was done "most of the time." Id. The fifty-two week period used in *Smith* is not a reasonable time period to determine if the claimant in the present case was regularly employed by the respondent. The commissioner, therefore, properly examined the eleven week period of employment to determine what the usual practice was between the respondent and the claimant.

The commissioner found that the claimant had a consistent schedule over the eleven week period, worked an average of thirty-eight and one-half hours per week, and that his average weekly wage was $310. The commissioner also found that the claimant worked four to five days each week for approximately six to ten hours per day. These facts support the commissioner's conclusion that the claimant was an employee of the respondent entitled to benefits under the act. Although the commissioner found that "most of the claimant's work was performed for purposes not associated with [the respondent's] trade or business," he was regularly employed during that time for more than twenty-six hours per week. We already have concluded that the commissioner's decision did not result from an incorrect application of the law to the subordinate facts, and we now conclude that the decisions did not result from an inference illegally or unreasonably drawn from them.[4] Therefore, the commissioner's conclusions on this issue must stand.

B

We next address the respondent's claim that the claimant was a casual laborer who was excluded from coverage under the act pursuant to § 31-275 (9) (B) (ii). In challenging the board's decision, the respondent argues that the commissioner's finding that the claimant was not a casual laborer is not supported by the evidence. An employee is barred from compensation under

the act if the employment is both casual in nature and not for the purposes of the employer's trade or business. *Vanzant* v. *Hall*, supra, 219 Conn. 678; see also *Thompson* v. *Twiss*, 90 Conn. 444, 452, 97 A. 328 (1916). Under the act, casual employment means "the occasional or incidental employment, the employment which comes without regularity." *Thompson* v. *Twiss*, supra, 451. "Ordinarily . . . where one is employed to do a particular part of a service recurring somewhat regularly with the fair expectation of continuing for a reasonable time, the employment is not casual." (Internal quotation marks omitted.) *Pallanck* v. *Donovan*, 105 Conn. 591, 594, 136 A. 471 (1927).

The respondent specifically challenges as incorrect the commissioner's conclusion that the claimant was not a casual laborer in light of the findings that the work at the respondent's house "had pretty much run its course" and that the arrangement between the respondent and the claimant "was intended to be short-term." The respondent argues that there are no findings as to the parties' expectations as to how long the working relationship would have continued if the accident had not occurred to support the conclusion that the claimant was not a casual laborer.[5] Thus, the respondent urges this court to remand the matter to the commissioner with direction to decide the issues in the respondent's favor. We disagree.

A party seeking to challenge a finding of the commissioner as incorrect or incomplete must first do so by filing a motion to correct the challenged findings. "A motion to correct the commissioner's finding, as provided in § 31-301-4[6] of the Regulations of Connecticut State Agencies, is the proper vehicle to be used when an appellant claims that the commissioner's finding is incorrect or incomplete. We have long held that this motion is not merely a technical requirement and that the failure to file this motion justifies dismissal of an appeal, for if an appellant claims that the finding is incorrect, the matter should first be called to the attention of the commissioner that he may have an opportunity to supply omitted facts or restate findings in view of the claims made in the motion." (Footnote altered; internal quotation marks omitted.) *Vanzant* v. *Hall*, supra, 219 Conn. 679; see also *Guerrera* v. *W. J. Megin, Inc.*, 130 Conn. 423, 425, 34 A.2d 873 (1943) (failure to file motion to correct finding of commissioner would, in itself, justify dismissal of appeal).

The respondent did not file a motion to correct any of the commissioner's findings following the 2015 finding and award, nor has he shown good cause for failing to file such a motion. The respondent has not availed himself of the opportunity to have the commissioner's finding and award corrected prior to his appeal of the board's affirmance of that award. He has thereby deprived the commissioner of the opportunity to cor-

rect the findings or supply omitted facts to those conclusions that the respondent claims are incorrect or inconsistent. See *Vanzant* v. *Hall*, supra, 219 Conn. 681. We, therefore, decline to consider the respondent's claim that the board improperly affirmed the commissioner's finding that the claimant was an employee under the act based on the exclusion in § 31-275 (9) (B) (ii) of casual laborers from the act's definition of employee.

## II

The respondent also claims that he was deprived of due process because he was not given reasonable notice that the claimant sought to hold him personally liable and was not mailed a notice of the pro forma formal hearing[7] and the deadline to submit a brief and proposed findings on the issue of personal liability. In response, the claimant argues that the respondent was afforded due process because the claimant filed a form 30C that identified the respondent individually as the claimant's employer, and the respondent was afforded additional due process because the commissioner granted his motion to open and vacated the 2013 finding and award to allow him to file a brief and proposed findings. We agree with the claimant.

We now set forth the applicable standard of review and legal principles. "The right to fundamental fairness in administrative proceedings encompasses a variety of procedural protections. . . . The scope of the right to fundamental fairness in administrative proceedings, like the scope of the constitutional right to due process that it resembles, is a question of law over which our review is plenary." (Internal quotation marks omitted.) *Recycling, Inc.* v. *Commissioner of Energy & Environmental Protection*, 179 Conn. App. 127, 149,     A.3d    (2018), citing *FairwindCT, Inc.* v. *Connecticut Siting Council*, 313 Conn. 669, 711, 99 A.3d 1038 (2014).

"Workers' compensation hearings must be conducted in a fundamentally fair manner so as not to violate the rules of due process. . . . A fundamental principle of due process is that each party has the right to receive notice of a hearing, and the opportunity to be heard at a meaningful time and in a meaningful manner." (Internal quotation marks omitted.) *Bidoae* v. *Hartford Golf Club*, 91 Conn. App. 470, 477, 881 A.2d 418, cert. denied, 276 Conn. 921, 888 A.2d 87 (2005), cert. denied, 547 U.S. 1112, 126 S. Ct. 1916, 164 L. Ed. 2d 665 (2006). "Due process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence." (Internal quotation marks omitted.) *Bryan* v. *Sheraton-Hartford Hotel*, 62 Conn. App. 733, 740, 774 A.2d 1009 (2001). "An integral premise of due process is that a matter cannot be properly adjudicated

unless the parties have been given a reasonable opportunity to be heard on the issues involved . . . ." (Internal quotation marks omitted.) Id., 741.

The following additional facts are relevant to our disposition of this issue on appeal. In commencing the workers' compensation action, the claimant mailed three form 30Cs, one each to the respondent, Fresh Start, and Fresh Start Realty, LLC, all addressed to 122 Oakland Street in Manchester. The respondent resided at 65 Shoddy Mill Road in Bolton. Nevertheless, there is no dispute that the respondent received all three forms. Upon receipt of the form 30C that listed "Michael Gramegna" as the employer, the respondent was put on notice that he, as an individual, was one of three respondents potentially liable to be found as the employer of the claimant. The respondent appeared and represented Fresh Start at the first formal hearing on September 14, 2012. At that hearing, the commissioner heard testimony from the claimant, the respondent, and several witnesses.

When the pro forma formal hearing for submission of briefs and proposed findings was scheduled for November 26, 2012, however, notice of the hearing was only sent to Fresh Start's business address, 122 Oakland Street in Manchester, rather than the respondent's residential address, 65 Shoddy Mill Road in Bolton. It is undisputed, and was a matter of public record, that the respondent had moved to Bolton with his family prior to the date of the claimant's injury, as the claimant helped the respondent move as part of his employment. The notice of the pro forma formal hearing lists "Mr. Michael Gramegna" as "Not Notified" under "Other(s)," and he is not listed as a respondent. On March 26, 2013, the commissioner issued the 2013 finding and award, which inconsistently referred to Michael Gramegna as "the respondent," or, alternatively, "the respondent's principal." The respondent received the 2013 finding and award at his Bolton address on April 8, 2013, and argues that this is the first time he understood that he could be held personally liable for the claimant's injuries.

Even if we assume, without deciding, that the respondent was deprived of due process prior to the 2013 finding and award because he was not afforded notice of the pro forma formal hearing and an opportunity to file a brief and proposed findings on the issue of personal liability, we conclude that the respondent is not entitled to relief in this appeal.[8] The 2013 finding and award is not the operative award in this appeal, and, in fact, that decision was vacated. The respondent suffered no due process deprivation with regard to the 2015 finding and award that he now challenges. The respondent had a full and fair opportunity to be heard on the issue of personal liability when he was given an opportunity to submit a brief and proposed findings to

the commissioner prior to the 2015 finding and award. The respondent submitted proposed findings and a brief to the commissioner on April 30, 2015. The respondent was also on notice from the 2013 finding and award that the claimant sought to hold him personally liable for the claimant's injuries.

On the basis of the forgoing, we conclude that the board properly concluded that the claimant was an employee subject to coverage under the act, and that the procedures used by the commissioner prior to the 2015 finding and award afforded the respondent sufficient due process to be held personally liable.

The decision of the Workers' Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] Fresh Start General Remodeling & Contracting, LLC, and the Second Injury Fund are also named as respondents in this appeal. For the purposes of this opinion, any reference to the respondent is to Michael Gramegna only. No finding and award was entered with respect to Fresh Start Realty, LLC. Any references to "Fresh Start" in this opinion are to Fresh Start General Remodeling & Contracting, LLC, which is not participating in this appeal.

Because neither the respondent nor Fresh Start possessed workers' compensation insurance coverage, the Second Injury Fund was added as an interested party to the matter. See General Statutes § 31-355 (h). The Second Injury Fund is not participating in this appeal.

[2] "The workers' compensation commission created the form 30C for use in complying with § 31-294c (a)." *Mehan* v. *Stamford*, 127 Conn. App. 619, 626, 15 A.3d 1122, cert. denied, 301 Conn. 911, 19 A.3d 180 (2011).

[3] For example, the following exchange occurred between the claimant and his attorney during direct examination:

"[The Claimant's Counsel]: [H]ow did you become employed by Fresh Start General Remodeling & Contracting?

"[The Claimant]: Mike, Michael Gramegna. . . .

"[The Claimant's Counsel]: And starting in October of 2011, did you start going to work for Fresh Start . . . General Remodeling & Contracting?

"[The Claimant]: Yes. . . .

"[The Claimant's Counsel]: How much was Mr. Gramegna or Fresh Start . . . going to pay you?

"[The Claimant]: $8 an hour.

"[The Claimant's Counsel]: And did they . . . actually pay you that amount of money?

"[The Claimant]: Yeah, he was paying me $8 an hour."

[4] See, e.g., *Gamez-Reyes* v. *Biagi*, 136 Conn. App. 258, 276–77, 44 A.3d 197, cert. denied, 306 Conn. 905, 52 A.3d 731 (2012) (commissioner's conclusions must stand where burden of proof for affirmative defense correctly placed on respondent, and facts supported conclusion that respondent had not met either prong of intoxication affirmative defense).

[5] The board also noted the incomplete record on this issue, stating: "We concede that the record is devoid of testimony which would illuminate the parties' expectations regarding how long the employment relationship might have continued had it not been terminated by the motor vehicle accident of January 13, 2012." Nevertheless, the board concluded that the commissioner's finding that the claimant was not a casual laborer was adequately supported by the record.

[6] Section 31-301-4 of the Regulations of Connecticut State Agencies provides in relevant part: "If the appellant desires to have the finding of the commissioner corrected he must, within two weeks after such finding has been filed, unless the time is extended for cause by the commissioner, file with the commissioner his motion for the correction of the finding and with it such portions of the evidence as he deems relevant and material to the corrections asked for . . . ."

[7] A pro forma hearing is one where a hearing is noticed for the submission of briefs and proposed findings of fact, but no party need appear. See, e.g., *Merenski* v. *Greenwich Hospital Assn., Inc.*, No. 5076, CRB 7-06-4 (June 18, 2007).

[8] The commissioner reached the same conclusion in his March 18, 2015 written memorandum of decision, stating: "On the existing record, there are sufficient grounds to conclude that [the respondent] did not receive notice of the pro forma formal hearing for submission of briefs and/or proposed findings." The commissioner then granted the motion to open and vacated the 2013 finding and award as to the respondent's personal liability to the claimant.

_____