******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# HOWARD AUSTIN, JR. *v.* COIN DEPOT CORPORATION ET AL.
## (AC 44135)

Bright, C. J., and Alvord and Norcott, Js.

*Syllabus*

The plaintiff employee appealed to this court from the decision of the Compensation Review Board affirming the decision of the Workers' Compensation Commissioner finding that the defendant nonprofit entity, created pursuant to the Connecticut Insurance Guaranty Association Act (§ 38a-836 et seq.), discharged its obligations under a provision (§ 31-307a (c)) of the Workers' Compensation Act (§ 31-275 et seq.) that entitles certain injured employees to cost of living adjustments to their disability benefits. The plaintiff sustained a compensable injury and, thereafter, entered a voluntary agreement with his employer, the named defendant. Following the insolvency of the named defendant's insurer, the defendant assumed responsibility for the payment of the plaintiff's disability benefits, and C was assigned to administer his claim. Thereafter, C identified that the plaintiff was entitled to a prospective cost of living adjustment (COLA) and a retroactive lump sum COLA payment, and C set up weekly prospective COLA payments and mailed a check for the retroactive lump sum COLA payment to the plaintiff's attorney. Upon being informed by the plaintiff that he had not received the check, C immediately began an investigation, and the defendant's head of accounting opened an investigation with the drawing bank, which determined that the proper party had endorsed the check. Subsequently, the plaintiff's attorney admitted to C that he had received the check and had given it to the plaintiff's father, Howard Austin, Sr. At the hearing before the commissioner, the plaintiff testified that the signature on the check was his father's signature. Although the plaintiff maintained that his legal name is Howard Austin, Jr., and that he uses that name on all legal documents, the COLA check, his weekly compensation checks and the agreement with his employer all bore the name Howard Austin. The plaintiff filed a claim seeking an order requiring the defendant to reissue the retroactive lump sum COLA payment, asserting that he was never paid as required by § 31-307a (c). In support of his claim, the plaintiff cited, inter alia, the negotiable instruments provisions of the Uniform Commercial Code. The commissioner denied the plaintiff's claim, concluding that the defendant had discharged its obligations under § 31-307a (c) by mailing the COLA check to the plaintiff's attorney and, thereafter, promptly investigating the matter upon receiving information that the plaintiff never received the check. In reaching his decision, the commissioner declined to apply the Uniform Commercial Code. The plaintiff thereafter appealed to the board, which affirmed the commissioner's decision, and the plaintiff appealed to this court. *Held* that the board did not err in determining that the commissioner properly concluded that the defendant had discharged its obligations under § 31-307a (c): the commissioner's decision was supported by the facts, including that the defendant followed standard practice in mailing the COLA check to the plaintiff's attorney, that making the check payable to Howard Austin was consistent with the weekly compensation checks sent to the plaintiff, that, when the check was presented at the drawee bank to transfer the funds to the holder, there were sufficient funds in the defendant's account and the check was negotiated without delay, and that, even though any alleged issue with the transfer of funds must have occurred after the check left the defendant's control and was delivered to the plaintiff's attorney, the defendant, when notified of an issue with the plaintiff's receipt of the funds, conducted an investigation into the alleged issue, which resulted in the determination that the proper payee benefited from the funds; moreover, the board correctly concluded that the commissioner properly declined to apply the Uniform Commercial Code, as its application was not incidentally necessary to the commissioner's resolution of the plaintiff's claim.

Argued October 18—officially released December 7, 2021

Appeal from the decision of the Workers' Compensation Commissioner for the Fourth District finding that the defendant Connecticut Insurance Guaranty Association discharged its obligations to the plaintiff for certain cost of living adjustment benefits, brought to the Compensation Review Board, which affirmed the commissioner's decision, and the plaintiff appealed to this court. *Affirmed.*

*Andrew S. Knott*, with whom, on the brief, was *Robert J. Santoro*, for the appellant (plaintiff).

*Joseph J. Passaretti, Jr.*, with whom, on the brief, was *Robert A. Skolnik*, for the appellee (defendant Connecticut Insurance Guaranty Association).

*Opinion*

ALVORD, J. The plaintiff, Howard Austin, Jr., appeals from the decision of the Compensation Review Board (board) affirming the decision of the Workers' Compensation Commissioner for the Fourth District (commissioner) finding that the defendant Connecticut Insurance Guaranty Association[1] discharged its obligations under General Statutes § 31-307a (c)[2] of the Workers' Compensation Act (act), General Statutes § 31-275 et seq. On appeal, the plaintiff claims that the board erred in determining that the commissioner properly concluded that the defendant fulfilled its statutory duty to the plaintiff regarding his retroactive lump sum cost of living adjustment (COLA) payment without considering certain provisions of the Uniform Commercial Code (UCC), General Statutes § 42a-1-101 et seq. We affirm the decision of the board.

The following facts, as found by the commissioner, and procedural history are relevant to our resolution of this appeal. In November, 2001, the plaintiff sustained an injury compensable under the act. In 2003, the plaintiff and his employer entered into a voluntary agreement that documented a 30 percent permanent partial disability of the plaintiff's cervical spine. Initially, Kemper Services was the insurer responsible for payments; however, the defendant assumed responsibility in 2013 when Kemper Services became insolvent. At that time, Marjorie Corbett, who is an employee of the defendant, was assigned to administer the plaintiff's claim.

In July, 2015, Corbett identified that the plaintiff was entitled to both a prospective COLA and a retroactive lump sum COLA payment in the amount of $27,059.46. Consequently, she set up prospective weekly COLA payments, and, in August, 2015, she mailed to the plaintiff's attorney, Enrico Vaccaro,[3] a check for $27,059.46, the retroactive lump sum COLA payment. In December, 2017, the plaintiff called Corbett to inquire about the calculation of his current COLA. During the conversation, Corbett mentioned the retroactive lump sum COLA payment, at which point the plaintiff informed Corbett that he had not received the check. Corbett immediately began an investigation, ordered copies of the original check, and examined the endorsement on the check. Subsequently, the defendant's head of accounting opened an investigation with the drawing bank (defendant's bank). Following its investigation, the defendant's bank determined that the proper party had endorsed the check.[4] In December, 2017, Attorney Vaccaro admitted to Corbett that he had received the retroactive lump sum COLA check and had given the check to the plaintiff's father, Howard Austin, Sr.[5] At the formal hearing before the commissioner, the plaintiff testified that the signature on the back of the retroactive lump sum COLA check was that of his father.

Although the plaintiff maintained that his legal name is Howard Austin, Jr., and that he uses that name on all legal documents, the retroactive lump sum COLA check, the recurring weekly compensation checks,[6] and the original agreement between the plaintiff and his employer regarding the workers' compensation benefits all bear the name "Howard Austin." At the formal hearing, Corbett testified that, at no point since the defendant took over administration of the plaintiff's claim in 2013, had she been informed that there was any issue with the weekly checks, all of which were made payable to "Howard Austin."

The plaintiff sought an order requiring the defendant to reissue the retroactive lump sum COLA payment of $27,059.46,[7] claiming that he was never paid as required by § 31-307a. The defendant maintained that delivery of the COLA check to the plaintiff's attorney—his authorized representative—equated to delivery to the plaintiff and completely discharged its duties under § 31-307a (c). The plaintiff argued that the defendant had not discharged its duties because the check was endorsed improperly, and, therefore, the benefits never were paid properly. The plaintiff cited "the [UCC], the law of negotiable instruments and commercial paper, and [presented] other arguments, incursions, allegations and remedies . . . all outside of the confines of [the act]" in aid of his argument that he was never paid as required by § 31-307a. In essence, the plaintiff argued that payment did not occur because the wrong person endorsed the check and, even though the defendant delivered the check to Attorney Vaccaro, who was the plaintiff's agent, that was not sufficient to constitute payment under § 31-307a and the law of negotiable instruments provisions in article 3 of the UCC.

The commissioner found that "it was customary and appropriate for the [defendant] to send the COLA check to Attorney Vaccaro in [the plaintiff's] stead"[8] and that the defendant's "responsibilities . . . were satisfied when [it] placed payment in the possession of the [plaintiff's] legal representative, and, when learning of a claimed irregularity, [it] initiated an investigation and followed it through to its conclusion." Further, because the defendant had issued checks payable to "Howard Austin" for years without ever receiving a request to change the name on the checks and because several legal documents in the original workers' compensation claim bore the name "Howard Austin," the commissioner determined that it was reasonable for the defendant to make the retroactive lump sum COLA check payable to "Howard Austin" rather than to "Howard Austin, Jr." Finally, the commissioner determined that the plaintiff's arguments involving the UCC were "beyond the jurisdiction of [the] tribunal to rule upon or to address . . . ." Thus, the commissioner "denied and dismissed" "[a]ny claims against [the defendant]

[in] association with the lump sum five year retroactive COLA . . . ."

The plaintiff then filed a petition for review of the commissioner's order with the board.[9] On review, the board found no error and affirmed the commissioner's decision, noting that it had "no reason to challenge the accuracy of the [plaintiff's] recitation of the provisions contained in article 3 of the UCC" but that the Workers' Compensation "[C]ommission is 'not in a position to determine what happened to the [plaintiff's] COLA check after it was received by the [plaintiff's] attorney . . . .' " This appeal followed.

Before addressing the substance of the plaintiff's claim, we set forth the applicable standard of review. "[T]he principles that govern our standard of review in workers' compensation appeals are well established. . . . The board sits as an appellate tribunal reviewing the decision of the commissioner. . . . [T]he review . . . of an appeal from the commissioner is not a de novo hearing of the facts. . . . [T]he power and duty of determining the facts rests on the commissioner . . . . [T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . . Where the subordinate facts allow for diverse inferences, the commissioner's selection of the inference to be drawn must stand unless it is based on an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . .

"This court's review of decisions of the board is similarly limited. . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [W]e must interpret [the commissioner's finding] with the goal of sustaining that conclusion in light of all of the other supporting evidence. . . . Once the commissioner makes a factual finding, [we are] bound by that finding if there is evidence in the record to support it. . . . [Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board." (Citation omitted; internal quotation marks omitted.) *Melendez* v. *Fresh Start General Remodeling & Contracting, LLC*, 180 Conn. App. 355, 362–63, 183 A.3d 670 (2018).

The plaintiff argues that the board erred in determining that the commissioner properly concluded that the defendant had discharged its statutory obligations by mailing the retroactive lump sum COLA check to the plaintiff's attorney and, thereafter, promptly investigating the matter upon receiving information that the plaintiff never received the check. Specifically, he contends that "the [c]ommissioner must still determine the fac-

tual matter of whether . . . the [c]heck was properly negotiated [under the UCC]." The plaintiff does not contest the determinations that Attorney Vaccaro was his agent for the purposes of delivery of the check, delivery to Attorney Vaccaro as the plaintiff's agent was commensurate with delivery to the plaintiff, and delivering such check to a claimant's attorney is standard practice. In addition, he does not contest the commissioner's finding that it was reasonable for the defendant to make the check payable to "Howard Austin." He does, however, contend that delivery of a check is insufficient to constitute payment under § 31-307a. According to the plaintiff, in order to be paid as required by the statute, the funds must actually have been transferred to the plaintiff.[10]

In its consideration of the plaintiff's appeal, the board stated that "the role of the commissioner in the present matter was to determine whether the [testimonial] evidence demonstrated that [the defendant] had discharged its obligation to pay to the [plaintiff] his retroactive COLA benefits. In order to make that determination, it was therefore incumbent upon the commissioner to assess the credibility of the witnesses who had knowledge of the chain of custody of the COLA check, and that is the assessment which transpired over the course of three formal hearings." The board then summarized the evidence and the commissioner's credibility determinations, and decided that "[t]he commissioner ultimately concluded that by issuing the COLA payment in care of the [plaintiff's] attorney, and then launching an investigation when Corbett became aware of the [plaintiff's] contention that he had never received the check, [the defendant] had met its statutory obligations. We do not dispute that there remain a number of outstanding unresolved issues relative to what happened to the check after it was received by the [plaintiff's] counsel, but we are unequivocally persuaded that the resolution of those issues goes well beyond the proper scope of inquiry in this forum." We agree with the board's determination.

The commissioner's decision was supported by the following facts. The defendant followed standard practice in mailing the lump sum retroactive COLA check to the plaintiff's agent, Attorney Vaccaro. The commissioner specifically determined that making the check payable to "Howard Austin" was consistent with the recurring weekly compensation checks sent to the plaintiff over the course of the previous two years and was therefore reasonable. When the check was presented at the drawee bank to transfer the funds to the holder, there were sufficient funds in the defendant's account and the check was negotiated without delay. Even though any alleged issue with the transfer of funds must have occurred *after* the check left the defendant's control and was delivered to Attorney Vaccaro, the defendant, when notified of an issue with the plaintiff's

receipt of the funds, conducted an investigation into the alleged issue, which resulted in the determination that the proper payee benefited from the funds. In light of these facts, we conclude that the board properly determined that the commissioner properly concluded that the defendant satisfied its duties pursuant to § 31-307a.

Furthermore, we agree with the board's conclusion that the commissioner properly declined to consider the issues the plaintiff raised under the UCC. The plaintiff contends that the commissioner should not have declined to apply the negotiable instruments provisions of the UCC because analysis of the UCC was necessary to resolve his claim that the defendant "failed in its explicit duties under the act."[11] The plaintiff first relies on General Statutes § 31-278, which provides in relevant part that a commissioner "shall have all powers necessary to enable him to perform the duties imposed upon him by the provisions of this chapter. . . ." Additionally, the plaintiff relies on case law that allows a commissioner to interpret other statutes when doing so is "incidentally *necessary*" to resolve a workers' compensation claim. (Emphasis added.) *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 443 and n.5, 705 A.3d 1012 (1997); see also *Frantzen* v. *Davenport Electric*, 179 Conn. App. 846, 851, 181 A.3d 578, cert. denied, 328 Conn. 928, 182 A.3d 637 (2018).  We are not persuaded.

On review, the board noted that, "while it is entirely possible that [the Workers' Compensation Commission] could theoretically be called upon to preside over a claim in which the interpretation of the UCC was 'incidentally necessary to the resolution of [the] case' . . . the admittedly unusual factual pattern in this appeal does not present us with that situation." (Citation omitted.) We agree with the board that, because application of the UCC was unnecessary to resolve the dispute between the parties, the commissioner properly did not apply it to resolve the dispute. Any dispute regarding events occurring after Attorney Vaccaro's receipt of the check presents a question outside of the scope of the claim submitted to the commissioner and should be raised in a separate legal action among the appropriate parties.

It is well established that "[a]dministrative agencies [such as the Workers' Compensation Commission] are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the validity of the statutes vesting them with power and they cannot confer jurisdiction upon themselves." (Internal quotation marks omitted.) *Del Toro* v. *Stamford*, 270 Conn. 532, 541, 853 A.2d 95 (2004). "[T]he jurisdiction of the [workers' compensation] commissioners is confined by the [a]ct and limited by its provisions. Unless the [a]ct gives the [c]ommissioner the right to take jurisdiction over a claim, it cannot be conferred upon [the commissioner]

by the parties either by agreement, waiver or conduct. . . . While it is correct that the act provides for proceedings that were designed to facilitate a speedy, efficient and inexpensive disposition of matters covered by the act . . . the charter for doing so is the act itself. The authority given by the legislature is carefully circumscribed and jurisdiction under the act is clearly defined and limited to what are clearly the legislative concerns in this remedial statute." (Internal quotation marks omitted.) *Stickney* v. *Sunlight Construction, Inc.*, 248 Conn. 754, 760–61, 730 A.2d 630 (1999). The primary statutory provision establishing the subject matter jurisdiction of the Workers' Compensation Commission is § 31-278, which provides in relevant part that "[e]ach commissioner . . . shall have all powers necessary to enable him to perform the duties imposed upon him by the provisions of [the act]. Each commissioner shall hear all claims and questions arising under [the act] . . . ." The plaintiff maintains that his UCC arguments are "claims" for purposes of § 31-278 and, therefore, necessarily fall under the commissioner's jurisdiction. In framing his argument this way, the plaintiff confuses the issues. It is clear that the commissioner had jurisdiction to resolve the plaintiff's claim for benefits under § 31-307a (c);[12] however, this does not mean that the commissioner's resolution of the claim for benefits required application of the UCC.

The plaintiff's argument rests on the principle that a commissioner may interpret statutory provisions outside of the act when "such interpretations [are] *incidentally necessary* to the resolution of a case arising under [the] act." (Emphasis altered; internal quotation marks omitted.) *Stickney* v. *Sunlight Construction, Inc.*, supra, 248 Conn. 764 n.5. For example, in *Wonacott* v. *Bartlett Nuclear, Inc.*, No. 2237, CRB 4-94-12 (June 25, 1996), the board considered the federal income tax code (tax code) in order to determine an employee's wages for purposes of applying the act. The issue in that case involved a provision of the tax code that allowed an employee to deduct employer reimbursed living expenses from gross income. Id. The board determined that the commissioner had to take into account this tax provision in order to determine the amount of compensation owed to the employee because the employee had reduced his reportable income as allowed by the tax code. Id.

In the present case, the commissioner did not need to apply the UCC to resolve the plaintiff's claim for benefits. It is undisputed that the defendant delivered the retroactive lump sum COLA check to the plaintiff's agent, and, at the time the check was negotiated, the defendant had sufficient funds in its account for the check to be honored. Unlike in *Wonacott*, the issue presented here—whether an employer's insurer complied with § 31-307a (c) when it issued a retroactive lump sum COLA check to an employee claimant—does

not require consideration of the UCC. Indeed, as aptly noted by the board, the events occurring after the plaintiff's attorney received the retroactive lump sum COLA check were inconsequential to the commissioner's analysis under § 31-307a (c). Accordingly, because the commissioner was able to resolve the issue without looking to the law of negotiable instruments and because analysis of the UCC was not "incidentally necessary" to resolving the issue presented, the board correctly determined that the commissioner did not need to reach the plaintiff's UCC arguments.

The decision of the Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] Coin Depot Corporation, the plaintiff's employer, was also named as a defendant but is not a party to this appeal. We therefore refer in this opinion to Connecticut Insurance Guaranty Association as the defendant.

The defendant is a nonprofit unincorporated legal entity created pursuant to the Connecticut Insurance Guaranty Association Act, General Statutes § 38a-836 et seq. All insurance companies licensed to issue insurance "shall be members of said association as a condition of their authority to transact insurance in [Connecticut]." General Statutes § 38a-839; see also General Statutes § 38a-838 (7) (defining term " '[m]ember insurer' " as used in Connecticut Insurance Guaranty Association Act). In the event that a member insurer becomes insolvent, it is the defendant's responsibility to take over the insolvent insurer's accounts. See General Statutes § 38a-841 (a).

Under General Statutes § 31-340 of the Workers' Compensation Act, General Statutes § 31-275 et seq., "employers are statutorily mandated to insure, or self-insure, to the full extent of all benefits to which a claimant is entitled under that act." *Franklin* v. *Superior Casting*, 302 Conn. 219, 228, 24 A.3d 1233 (2011). Under this section, the insurer becomes directly liable to the employee. See General Statutes § 31-340.

[2] General Statutes § 31-307a (c) provides in relevant part: "[T]he weekly compensation rate of each employee entitled to receive compensation under section 31-307 as a result of an injury . . . which totally incapacitates the employee permanently, shall be adjusted as provided in this subsection as of . . . the October first following the injury date . . . and annually on each subsequent October first, to provide the injured employee with a cost-of-living adjustment in his or her weekly compensation rate as determined as of the date of injury under section 31-309. . . . The cost-of-living adjustments provided under this subdivision shall be paid by the employer without any order or award from the commissioner. The adjustments shall apply to each payment made in the next succeeding twelve-month period commencing with . . . the October first next succeeding the date of injury . . . . [W]ith respect to any employee who was adjudicated to be totally incapacitated permanently subsequent to the date of his or her injury or is totally incapacitated permanently due to the fact that the employee has been totally incapacitated by such an injury for a period of five years or more, such benefit shall be recalculated . . . to the date of such adjudication or to the end of such five-year period, as the case may be, as if such benefits had been subject to recalculation annually under the provisions of this subsection. The difference between the amount of any benefits which would have been paid to such employee if such benefits had been subject to such recalculation and the actual amount of benefits paid during the period between such injury and such recalculation shall be paid to the dependent not later than . . . thirty days after such adjudication or the end of such period, as the case may be, in a lump-sum payment. . . ."

[3] Attorney Vaccaro represented the plaintiff from July, 2009, through the appeal to the board.

[4] The defendant's bank reached out to the drawee bank—the bank where the check was deposited—which determined that the correct payee benefited from the funds.

[5] Corbett immediately memorialized her conversation with Attorney Vaccaro.

[6] From April, 2013, onward, the plaintiff received weekly compensation payments by checks made payable to "Howard Austin."

[7] The plaintiff also sought reimbursement of attorney's fees and costs.

[8] In making this finding, the commissioner relied on the statements of Corbett and two seasoned workers' compensation attorneys, all of whom testified that it was common industry practice to send large lump sum payments, such as retroactive COLA payments, to the claimant's legal counsel rather than directly to the claimant.

[9] Prior to filing the petition for review, the plaintiff filed a motion to correct that the commissioner denied in its entirety on the ground that it was untimely filed. On appeal to the board, the plaintiff argued that the denial of the motion was an abuse of discretion, but the board disagreed. The plaintiff does not challenge the denial of the motion on appeal to this court.

[10] Specifically, the plaintiff emphasizes that "a check is not itself a payment, but only a promise to pay." He cites General Statutes § 42a-3-104 (a) for the proposition that a check is "an unconditional promise or order to pay . . . ." His argument rests on a misapplication of General Statutes § 42a-3-403, which provides in relevant part: "[A]n unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of the person who in good faith pays the instrument or takes it for value. . . ." Despite the superficial relevancy of this section, the term "signature" applies to the name signed on the *front* of the check, which authorizes payment, and does not refer to the *endorsement* on the *back* of the check, which allows the bank to transfer the funds to the holder of the check (the person who endorsed the back of the check). See General Statutes §§ 42a-3-103, 42a-3-201 and 42a-3-401 through 42a-3-403.

In addition, the plaintiff cites *Hartford Accident & Indemnity Co.* v. *South Windsor Bank & Trust Co.*, 171 Conn. 63, 368 A.2d 76 (1976), to support his argument. That case, however, is patently inapplicable because it involved a conversion action and the question of an agent's authority to endorse a check under agency law. Id., 68–70.

[11] Before the commissioner, the plaintiff sought, inter alia, "an order requiring the [defendant] to pay the [plaintiff] the sum of $27,059.46 for COLA benefits . . . ." At oral argument before this court, the plaintiff's counsel asserted that, on remand, the commissioner could require the defendant to reissue the check, at which point the defendant could institute an action against one or both of the banks for reimbursement, or could determine that one of the banks was "on the hook" for issuing full payment to the plaintiff. Counsel's suggestion that the commissioner on remand could determine that one of the banks, a nonparty to the workers' compensation proceeding, was "on the hook," further demonstrates why the plaintiff's claim is outside the scope of the workers' compensation forum.

[12] The plaintiff's claim for benefits is one that arises directly from the act and is between the plaintiff, his employer, and his employer's insurer. See General Statutes § 31-278.